CAMERON & INGALLS ENGINEERING CO., INC. *vs.* PROVIDENCE BODY CO.

JUNE 22, 1921.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

(1) *Contracts. Adding to Agreement.*

Where parties have reduced to writing the terms of an agreement the law does not permit a party to add to the contract a new provision which requires the performance of additional duties. This rule is more than a rule of evidence—it is one of substantive law.

(2) *Contracts.*

Where plaintiff was to install a heating system with the exception of the boiler, which was to be installed and located by the defendant, through

another contractor, the fact that plaintiff gave gratuitous advice to defendant as to the depth of the boiler pit, a subject on which defendant with little effort could have informed himself, would not warrant the inference that plaintiff assumed any responsibility concerning the depth of the pit, which was entirely outside the scope of any contractual obligations of plaintiff.

ASSUMPSIT.    Heard on exceptions of defendant and overruled.

RATHBUN, J.    This is an action in assumpsit to recover the contract price of certain labor and materials.    The case is before this court on the defendant's exception to the action of the trial court in directing a verdict for the plaintiff for $3,269.64; also on exceptions to certain rulings made during the trial.

The parties entered into a contract whereby the plaintiff agreed to install in accordance with a blue print plan a gravity return steam heating·system (excepting boiler and burner) in the defendant's office building and factory for the sum of $3,112.50.    The boiler and burner were furnished by the defendant and installed by another contractor but by the terms of the contract it was the duty of the plaintiff to connect the main steam supply pipe with the defendant's boiler header.    The contract contained a clause, as follows: "This system will be sufficient to maintain a temperature of 60° in main building and 70° in the office at zero weather, with 5 lbs. steam pressure in mains."    The main building was about eighteen feet distant from the office building in which the boiler was located.    It being the defendant's desire that the steam pipes connecting the two buildings should not be exposed to the elements the contract provided that the supply pipe which takes the steam from the boiler should run from the top of the boiler horizontally to a point near the end of the office building and, dropping down, pass through a tunnel to the basement of the main building and rise from the basement to the roof of said building.    The contract also provided that the return pipe should pass through said tunnel to the boiler.    The plaintiff had nearly

completed its work as specified in the contract, except making connections with the boiler, before the boiler arrived. After the boiler was set and connections were made it was found that the water line was but six inches or less below the main steam pipe which takes the steam from the boiler. The result was that when the water in the boiler was heated sufficiently to produce the necessary steam pressure, water passed from the boiler into the pocket made by running the main steam pipe through the tunnel. The pocket being filled with water it was impossible to force steam into the main building and the steam pressure against the water in the pocket caused hammering.

The plaintiff performed all of its work in accordance with the contract and the defendant's experts admitted that the system would work properly if the boiler was lowered enough to bring the water line the proper distance below the main steam pipe. This the defendant did not do. It remedied the defect by drawing the water from the pocket in the main steam pipe through a small pipe into a tank by the side of the boiler from whence the water was pumped by an electric pump back into the boiler. To install this extra equipment cost the defendant $1,135, which sum it contends should have been deducted from the plaintiff's bill. The system described in the contract was a gravity return system. After the extra equipment was installed the defendant had a different system than the plaintiff had agreed to install. It had a more expensive and probably a better system.

The defendant contends that the plaintiff before the contract was signed orally agreed to determine the depth of the boiler pit and that plaintiff did actually determine the depth of the pit. Joseph W. Monahan, treasurer of the defendant company, testified that before the contract was signed, "We informed both of these gentlemen (officers of the plaintiff company) that . . . .we wished them . . . to determine the location and depth of the pit of the boiler which we were to furnish." "They didn't figure on furnishing the boiler, but they did tell us they would deter-

mine the location of it." The plaintiff's witnesses denied that the plaintiff either agreed to fix or did fix the depth of the boiler pit.

The contract for setting the boiler was given to another contractor. The plaintiff's only duty in respect to the boiler was to connect it with the rest of the heating system and with the water supply. The written contract between the parties is complete in itself. No explanation is necessary to make clear its terms or provisions. It states definitely what labor and materials the plaintiff was bound to furnish and also the price which the defendant agreed to pay. The parties having reduced to writing the terms of the agreement the law does not permit the defendant to add to the contract a new provision which requires the performance of additional duties. The rule is more than a rule of evidence. It is a rule of substantive law. 4 Wigmore on Ev. Sec. 2425. It would be equally appropriate for one of the parties to ask to be permitted to show that the price to be paid was different than the amount written in the contract as to ask to show that the plaintiff before the signing of the contract orally agreed to furnish other labor than that definitely specified and described in the written contract. The rule is well illustrated by several decisions of this court. *Zanturjian* v. *Boornazian,* 25 R. I. 151, was a bill in equity to enjoin the respondents from engaging in business within certain specified territory. The complainant purchased from the respondents a coal and wood business and the respondents executed a bill of sale which, after describing the articles sold, contained the clause "together with the good will of said business." Complainant was not permitted to prove that the respondents at the time of the sale agreed not to engage in business within the limits of territory served by the business which they sold. See also *Gage Mfg. Co.* v. *Woodward and Stillman,* 17 R. I. 464; *Myron* v. *Union R. R. Co.,* 19 R. I. 125; *Watkins* v. *Greene,* 22 R. I. 34; *Kenney* v. *Foster & Bros. Co.,* 25 R. I. 474.

The defendant contends that the trial court should have submitted to the jury the question whether the plaintiff's engineer Ingalls determined the depth of the boiler pit. For our consideration the depth of the pit is of no importance except as it determines the height of the boiler's water line in reference to the main steam pipe. Joseph W. Monahan, treasurer of the defendant company, testified as follows: "Q. And did Mr. Ingalls determine for you the depth of the pit in which the boiler was to rest? A. He did." . . . "A. I couldn't be positive about the depth of the pit and we (defendant) telegraphed to the boiler people to give us the water line of the water column which was 7 feet and 2 inches." "Did Mr. Ingalls tell you where and how deep to locate the boiler? A. He did. Q. What did he tell you? A. To make it two inches deeper than he originally estimated." Before the boiler arrived the said Monahan learned from the manufacturer the height of the water line from the bottom of the boiler. He knew that the water line of the boiler should be below the main steam pipe. He knew that the only reason for setting the boiler in a pit was to bring the water line of the boiler below the main steam pipe. It was the duty of the defendant and not the plaintiff to arrange the details of the pit and to set the boiler. Defendant assumed the responsibility of installing the boiler. If the defendant's officers and agents did not know how much below the main steam pipe the water line should be they should have informed themselves, but the testimony shows that they did know. Mr. Ingalls of the plaintiff company testified that he asked that the boiler be set so as to give a drop of 18 inches from the main steam pipe to the high water line in the boiler. This testimony was not contradicted. The defendant knew that the boiler should be set so that the high water line in the boiler would be 18 inches below the main steam pipe and it was the defendant's duty to arrange the details of the pit so that the high water line would be 18 inches below the main steam pipe. Joseph W. Monahan knew where the high water line

was located on the boiler and he knew the height of the high water line on the boiler. By adding 18 inches to the latter dimension the distance from the main steam pipe to the bottom of the pit could have been ascertained. Taking the testimony of Joseph W. Monahán as true, Ingalls merely gave gratuitous advice on a subject concerning which said Monahan with little effort could have informed himself and no inference can be drawn that the plaintiff assumed any responsibility concerning the depth of the boiler pit. The trial court did not err in directing a verdict for the plaintiff.

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court with direction to enter judgment on the verdict as directed by the court.

*Frederick W. O'Connell, Swan, Keeney & Smith,* for plaintiff.

*Ratcliffe G. E. Hicks,* for defendant.