State ex rel. Chaney v. Grinstead.

THE STATE ex rel. WALTER L. CHANEY v. J. R. GRINSTEAD et al., Judges of County Court of Johnson County.

. In Banc, April 9, 1926.

1. **CONSTITUTIONAL QUESTION: Pleading.** In a mandamus suit brought against the judges of a county for salary alleged to be due relator under a certain statute, the respondents in their return should challenge the validity of the statute, pointing out the constitutional provision which it violates; otherwise, respondents are not entitled to have its validity considered. Whether a suit is brought in this court or a circuit court, the issues are made by the pleadings, and cannot be made in the briefs. However, as there is a number of like cases now pending, in some of which the validity of the statute may have been properly raised, the constitutional question is here considered in order that it may be determined once for all.

2. **FEES: Classification of Counties by Population: Valid Statute.** The provision of the Constitution (Sec. 12, art. 9) declaring that "the General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose may classify the counties by population" authorizes the Legislature to enact a law classifying counties according to population, making the law apply uniformly to all the counties in each class. The Legislature is not confined to classification according to population; but it may use that method. The Legislature could use a census for ascertaining the population or it may use some other arbitrary method; the only restriction is that the rule employed must apply uniformly to all counties having approximately the same population.

3. ————: ————: **Act of 1919.** The Act of 1919 (Sec. 734, R. S. 1919) declaring that "the number of inhabitants of any county shall, for the purposes of this section, be ascertained by multiplying the whole number of votes cast at the last preceding Presidential election by five, until after the population of such county shall have been ascertained by the next decennial census of the United States," was a constitutional classification, and is not invalid because the Legislature arbitrarily required that, as a method of ascertaining the population, the number of votes cast at the last election should be multiplied by five, instead of requiring a census showing the exact population.

State ex rel. Chaney v. Grinstead.

4. **VOTES: Women: Salary: Prosecuting Attorney.** The word "votes" used in the Act of 1919, fixing the salary of a prosecuting attorney according to the population of the county, and declaring (Sec. 734, R. S. 1919) that the population "shall be ascertained by multiplying the whole number of votes cast at the last Presidential election by five," cannot be confined to votes cast by males at the election held in 1920. The word "votes" has a plain and unambiguous meaning, and where words used in a statute are in no way of dubious or doubtful significance in the connection in which used there is no room for judicial construction. The word "votes" means ballots cast by those authorized by law to vote. The right of women to vote was visible when the Act of 1919 was enacted; and the act was a general law dealing with a general class, which was subject to increase or decrease by legislative acts, and must be construed to apply to conditions as they then and thereafter existed.

5. **ACT OF 1921: Void.** The Act of 1921 relating to the salaries of prosecuting attorneys, etc., was a void act, and did not affect the Act of 1919.

6. **ESTOPPEL: Additional Salary: Delay in Presenting Claim.** Where relator, elected prosecuting attorney in 1920 and again in 1922, for a term of two years at each election, presented to the county court a claim for $1250 for the first six months of 1921, in addition to his admitted salary then due of $1250, which was allowed, but thereafter presented no further claim for an additional allowance at the rate of $2500 a year until after his second term expired, he is not estopped by such facts to sue for such additional salary, amounting for the three years and a half to $8750, on the theory that, under the Act of 1919, his legal salary was $5,000 per year, whereas he had been paid, except for said six months, only $2500 per year, there being during the entire time suits pending in this court in which the Act of 1921, which attempted to supplant the Act of 1919, was being assailed as unconstitutional, and he brought the present suit soon after the Act of 1921 was declared invalid, and the Act of 1919 was declared to apply to the whole four years.

7. ————: **Contract: Enlargement by Oral Testimony.** Testimony that relator, entitled under the statute to back or additional salary in excess of $8,000, after his term as prosecuting attorney expired, in consideration of his employment as attorney in two cases pending against the county and of a fee of $250 to be paid, orally agreed to waive his claim to said salary, is inadmissible in his original mandamus suit to compel the county to pay him the unpaid salary, for three reasons: (a) because the county court can speak only by its records, and oral testimony cannot be used to enlarge them or supply their omissions; (b) because, while the contract was in writ-

ing, neither the contract, nor the order of the court upon which it was based, mentioned such waiver or consideration for his employment, and the statute (Sec. 2164, R. S. 1919) declares that such contract, "including the consideration," shall be in writing; and (c) because evidence of talks and oral understandings preceding a written agreement is not competent to impeach or amplify it.

Corpus Juris-Cyc. References: Constitutional Law, 12 C. J., Section 212, p. 780, n. 98; Section 215, p. 784, n. 42 New. District and Prosecuting Attorneys, 18 C. J., Section 67, p. 1331, n. 47 New; Section 68, p. 1331, n. 60 New, 62 New. Elections, 20 C. J., Section 11, p. 5'8, n. 81, 82, 83, 84. Evidence, 22 C. J., Section 1459, p. 1098, n. 96; p. 1102, n. 97. Statutes, 36 Cyc., p. 1005, n. 33; p. 1114, n. 96; p. 1115, n. 97, 98, 99, 1, 2; p. 1235, n. 25. Vote, 40 Cyc., p. 224, n. 20.

Mandamus.

PEREMPTORY WRIT AWARDED.

*S. J. Caudle* and *D. C. Chastain* for relator.

(1)　The Salary Act of 1921 (Laws 1921, page 574) is unconstitutional and the provisions of Section 734, R. S. 1919, govern as to relator's salary. State ex rel. Brunjes v. Bockelman, 240 S. W. 209; State ex rel. McCaffrey v. Bailey, 272 S. W. 921; O'Bryan v. Randolph County, 274 S. W. 356.　(2)　The payment of twelve hundred and fifty dollars in December, 1922, was only a partial payment and did not discharge the debt. State ex rel. Moss v. Hamilton, 260 S. W. 466; State ex rel. Jarvis v. Deering, 274 S. W. 477.　(3)　The testimony of the respondents as to the conversation, with relator prior to the employment of relator as special counsel, is incompetent and should not be admitted because that County Court, being a court of record, can speak only by its record. Sec. 2323, R. S. 1919; Medlin v. Platte County, 8 Mo. 235; Johnson Co. v. Court, 84 Mo. 489; Decker v. Diemer, 229 Mo. 296; Nodaway Co. v. Williams, 199 S. W. 224; Oldaker v. Spiking, 210 S. W. 59; Heinz v. Felkins, 288 Mo. 223.　(4)　Further, county contracts are required to be in writing and to have the consideration stated therein. Sec. 2164, R. S. 1919; Anderson v. Ripley County, 181 Mo. 146; Morrow v. Pike County, 189 Mo. 610.　(5)　Such testimony was further inadmis-

sible because the contract of employment was reduced to writing and all prior negotiations are merged into the writing and parol evidence is not admissible to vary, contradict or explain its terms. 22 C. J. 1070; 10 R. C. L. 208; Tracy v. Iron Works, 29 Mo. App. 342, affirmed 104 Mo. 193; State ex rel. Yoeman v. Hoshaw, 98 Mo. 358; Jones v. Beck, 43 Mo. 266; Crim v. Crim, 162 Mo. 544; Hagar v. Hagar, 71 Mo. 610; Reigart v. Coal Co., 217 Mo. 142; State ex rel. v. Trimble, 256 S. W. 171; Boyd v. Paul, 125 Mo. 9; McPherson v. Kissee, 239 Mo. 664. (6) The alleged waiver was not based upon any consideration. This is required where substantial rights are involved. 27 R. C. L. 910; 40 Cyc. 263; Fairbanks v. Baskett, 98 Mo. App. 53; Maier v. Wallace, 211 Mo. App. 454; Haseltine v. Ausherman, 87 Mo. 410. (7) The statements relied on as an estoppel are not sufficient for that purpose, since they were not made by relator with the full knowledge of his legal rights, nor did the respondents act thereon to their injury. 10 R. C. L. 697; 21 C. J. 1119; Burk v. Murphy, 275 Mo. 397; Kline v. Groeschner, 280 Mo. 599; Thompson v. Lindsey, 242 Mo. 53; Freeland v. Williamson, 220 Mo. 217; Barnett v. Kemp, 258 Mo. 139; DeLashmutt v. Teetor, 261 Mo. 412; Harrison v. McReynolds, 183 Mo. 533; Commerce Trust Co. v. Keck, 283 Mo. 209; Mathews v. Van-Cleve, 282 Mo. 19. (8) The alleged estoppel could operate at the most only to protect the county against the payment of the two hunderd and fifty dollar attorney fee to relator. 10 R. C. L. 697; 21 C. J. 1200; State ex rel. Moss v. Hamilton, 260 S. W. 466.

*Nick M. Bradley* and *W. E. Owen* for respondents.

(1) If the Act of 1919, Laws 1919, p. 672, shall continue to receive the construction indicated by the cases of State ex rel. Brunjes v. Bockelman, 240 S. W. 209; State ex rel. McCaffrey v. Bailey, 272 S. W. 921; O'Bryan v. Randolph County, 274 S. W. 356, then said act, now Sec. 734, R. S. 1919, is illegal, unconstitutional

and void, as violative of Sec. 12, Art. 9, Constitution of Missouri. (a) Evidently this mandate of the Con-· stitution requires that the Legislature shall, when it makes the attempt, classify the counties, by uniform law, in some appropriate manner according to the real or true population, approximately at least. There is no warrant here for the Legislature to make a classification by population and then proceed to provide a method of ascertaining that population that would give a fictitious, absurd or fabulous population to the various counties, and thereby destroy the classification made in the body of the act. It could not adopt a method of determining population for the counties, to be applied to the classification already made, so ridiculous and erroneous that it gives indicated populations of double and treble the actual populations of the various counties, largely increase salaries over the classifications set out, and become an added burden on the taxpayers. A statute should never be so construed as to convict the State of a breach of good faith. 25 R. C. L. 1029; Ketchum v. St. Louis, 101 U. S. 306. (b) A reading of the Act of 1919, now Sec. 734, R. S. 1919, shows that salaries were fixed according to classification of counties by population. There is nothing in the act to lead to the inference that the Legislature intended to make use of a method of determining the populations of the counties that would not be fair and approximately serve the purpose. It was the same method that had been in use in the State for over fifty years. But for that long period of time only males could vote, and it seems very evident that the Legislature used the term "votes" in the same way and with the same sense that it had been previously used for decades. If it now be held that the word "votes" as used in the act includes women votes also, it is apparent that the vote will be largely increased and in many counties even doubled, depending on how many of the women took advantage of the new franchise, for the number of males and females are practically the same. (c) This court has held that

it will take judicial notice of the United States census returns and also of the election returns and contents of the Official Manual of the State. Carter Co. v. Huett, 259 S. W. 1057; State ex rel. v. Walker, 257 S. W. 470. If a plain simple construction be put on said act, one evidently in accord with the intention of the Legislature when the act was passed, and the census be the guide to the classification, all of these worries, inequalities, impossibilities, split and jumbled classifications disappear. (2) The word "voters" used in the concluding paragraph of the 1919 Act means "male votes," and should be so interpreted. Such was the sense in which it was used by the Legislature at the time of the passage of the act, which intention is controlling, and populations are to be based on the census of 1920. (a) Words are often omitted, or supplied by implication, and sentences transformed to render the statute a consistent whole and effectuate the legislative will, which is the paramount thing to be determined. 25 R. C. L. 1078; Dubois v. Hepburn, 10 Pet. 1; State v. Lowry, 166 Ind. 372; Bingham v. Birmingham, 103 Mo. 345; State ex rel. Auld v. Field, 112 Mo. 554; Henry & Co. v. Evans, 97 Mo. 52. (b) The real intent and purpose of the Legislature will prevail over the literal import of the words used. When the intention is discernible it will stand as the letter of the law, and will prevail over the strict letter. 25 R. C. L. 968, sec. 222, and page 959; Humes v. Mo. Pac. Ry., 82 Mo. 221; Grimes v. Eddy, 126 Mo. 168; Boyd v. Mo. Pac. Ry., 249 Mo. 110; Kane v. Ry., 112 Mo. 34; State ex rel. v. Talty, 166 Mo. 529; Riddick v. Walsh, 15 Mo. 519; Cole v. Skainka, 105 Mo. 303; Coonce v. Munday, 3 Mo. 337.; United States v. Freeman, 3 How. 556; The Paquette Habana, 175 U. S. 677; United States v. Corliss Engine Co., 91 U. S. 321; McHenry v. Alford, 168 U. S. 196; State v. Husford, 35 R. I. 387; Young v. Regents, 87 Kan. 239; State v. Yay, 45 Utah, 411. (c) When a statute is fairly susceptible of two constructions, the injustice, unreasonableness, absurdity, hardship or even

inconvenience that may follow one construction may be properly considered, and a construction placed on it that will avoid such objectionable consequences and advance what will be presumed to be its true object and purpose. Lumber Co. v. Mo. Pac. Ry., 216 Mo. 658; 25 R. C. L. 1018, sec. 255; Norval Shapleigh Co. v. Cook, 178 Mo. 189; Bowers v. Smith, 111 Mo. 45; State ex rel. v. Ry., 105 Mo. App. 207; Neenan v. Smity, 50 Mo. 525; State ex rel. v. Becker, 233 S. W. 649. (3) The Act of 1921, classifying counties and fixing salaries of prosecuting attorneys, is a valid law, and only the second proviso is void, and the rest of the statute with that excinded should stand as the governing law. (a) The Legislature may reduce salaries of county officers, even during the term for which they were elected, and there is no constitutional inhibition against so doing. Givens v. Daviess County, 107 Mo. 603; Lycett v. Wolff, 45 Mo. App. 496; State ex rel. Bailey, 272 S. W. 921. (b) When called upon to pronounce invalid an act of legislation which has been passed with all of the forms and solemnities requisite to give it force of law, the question becomes one of high delicacy and discriminating use of judicial power. Courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light on the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt. State ex rel. v. McIntosh, 205 Mo. 602; State ex rel. v. Warner, 197 Mo. 656; People v. Thompson, 155 Ill. 460. (c) The natural and appropriate office of a proviso is to restrain or qualify some preceding matter. It should be construed to include no matter not within the letter of the proviso. Since the office of a proviso is not to repeal the main provisions of the act, but to limit their application, no proviso should be so construed as to destroy those provisions. Stump v. Hornbeck, 94 Mo. 25; Bingham v. Birmingham, 103 Mo. 345; Gist v. Const.

Co., 224 Mo. 388; State ex rel. v. Bates, 225 Mo. 262; Greene County v. Lydy, 263 Mo. 95; State ex rel. v. St. Louis, 241 Mo. 246; State ex rel. v. Gordon, 236 Mo. 170; United States v. Dixon, 15 Pet. 141.

GRAVES, J.—This is another case relating to the salaries of prosecuting attorneys. Relator was Prosecuting Attorney of Johnson County for four years, from January, 1921, to December 31, 1924. His first election was at the general election of 1920. He claims that his salary was due and payable under the Act of 1919, and was for the sum of $5,000 per annum, on and after January 1, 1921. The Act of 1921, he contends, was unconstitutional, and it will later appear that we have so ruled. With the exception of six months of the time (six months from January 1, 1921) the county court would only pay him at the rate of $2500 per year. For the six months, supra, he was paid at the rate of $5,000 per year. His action here is by mandamus to compel the respondents, the County Court of Johnson County, to pay him the sum of $8750.02, the balance due him upon his salary. If he was entitled to $5,000 per year there is no dispute of the amount due. In other words, unless the things urged in opposition to the claim of $5,000 per annum, have substance, our writ should go. The return is short, and we reproduce it as follows:

"Respondents, for return to the petition herein, admit the election and qualification of Walter L. Chaney as Prosecuting Attorney of Johnson County, Missouri, as in his petition alleged; admit that he received pay as in said petition stated for his services, and state that the amount so received by him is all he is and was entitled to as such prosecuting attorney under the law; admit that the respondents are the duly elected and qualified judges of the County Court of said Johnson County; and deny each and every other allegation in said petition contained.

"For further return and answer herein respondents state that on the 4th day of December, 1922, petitioner

filed with the County Court of Johnson County, Missouri, the following demand, to-wit:

"Johnson County, Missouri,
                    to
"Walter L. Chaney, Prosecuting Attorney,

"To balance due on unpaid salary from January 1, 1921, to June 30, 1921, said salary for the time being at the rate of $5,000 per year under authority of the Supreme Court decision, State ex rel. Brunjes v. Brockman, 240 S. W. 209, there still being due on each month the sum of $208.33, making a total for the six months of $1250.

"Signed, WALTER L. CHANEY.

"That said claim of $1250 was by said court on the same day paid and accepted by said Chaney in full and when he was in the possession of all the facts; that afterwards there was pending in the Circuit Court of Johnson County, Missouri, two suits, entitled J. M. Caldwell, Plaintiff, v. Johnson County, Missouri, and State ex rel. Johnson County v. J. L. DesCombs, Administrator, et al.; that the county court of said county for and on behalf of said county decided to hire special counsel to assist the defense in the trial of said cases and with this in view consulted petitioner, Walter L. Chaney, attorney at law, and told him that they had understood and had been informed by him that he contemplated suing said county of Johnson for the salary in his petition herein claimed, and that if he intended to bring such suit or attempt to collect said salary they did not desire to hire him, but that if he would not bring such suit and forego the collection or attempted collection of said claim they would hire him as special counsel to assist in the trial of the above-mentioned cases; that said Chaney stated to the court that he would accept said hire and not collect or attempt to collect the money in his petition herein claimed, and said court relying upon said promises and statement hired said Chaney in said cases and agreed to pay him the sum of two hundred and fifty dollars for his services, which said contract of hiring was properly made of record by said court on the 3rd day of February, 1925, and a contract in writing entered

into by said Chaney and said court for Johnson County, Missouri, to this effect.

"That by reason of the premises said petitioner has waived his right to collect the claim in said petition set out and is estopped from recovering judgment for same.

"Wherefore respondents pray that the petition herein be dismissed and that the respondents recover their costs herein expended."

Relator's answer sufficed to place in issue all the matters charged and pleaded in the return, but relator goes further and sets up and pleads the order of the county court as to relator's employment in the two cases named in the return, and also the written contract of employment signed and entered into under the terms of the record order of employment. The record order of employment is in this language:

"Ordered by the County Court of Johnson County, Missouri, that Walter L. Chaney, attorney at law, be and is hereby employed by said county court to assist the Prosecuting Attorney of Johnson County, Missouri, in the suit or action at law now pending in the Circuit Court of Johnson County, Missouri, State of Missouri ex rel. Johnson County v. John L. Des Combes, Administrator of the Estate of L. R. Katherman, Deceased, et al., to collect moneys due from John L. DesCombes, administrator as aforesaid and the bondsmen of said L. R. Katherman, deceased, former Collector of Johnson County, Missouri, for the recovery of amounts due under said bond; and for the further consideration of services to be rendered by said Walter L. Chaney, attorney at law, in the suit or action at law now pending in the Circuit Court of Johnson County, Missouri, in the case of J. M. Caldwell v. Johnson County, for claimed back pay or salary said to be due and payable to said J. M. Caldwell, in the trial of said causes in the circuit court; and for all such services mentioned the said county court shall pay out of the County Revenue Fund to the said Walter L. Chaney the sum of $250 after the termination of said cases, and for necessary expenses that may be incurred by said Walter L. Chaney in the preparation for trial and in the trial of said causes of action as aforesaid, subject to the approval of the county court; and it is further ordered by the court that J. R. Grinstead, presiding judge of this court, be and is hereby appointed agent for Johnson County, Missouri, to enter into said contract with said Walter L. Chaney for said services as above set out and sign contracts in duplicate."

The written contract was made and signed in strict conformity to this order, and neither the court record authorizing the employment, nor the contract of employ-

ment, said a thing about relator agreeing not to prosecute a suit for the remainder of his salary.

Respondents filed a reply to this answer to their return in this language:

"Respondents for reply to the answer of relator admit that the contract of employment and record of the same on County Court Record W, page 143, as set out in said answer is correct, but that the inducement to same was a promise made by relator that if so hired he would not demand pay of the County Court of Johnson County for further services as prosecuting attorney as are claimed in his petition herein, and that such promise and agreement caused and induced respondents to enter into said contract and make said record, and had it not been for such promise and agreement said contract would not have been entered into by relators.

"Further replying respondents deny each and every other allegation in said answer contained.

"Wherefore having fully replied pray that the writ herein applied for be denied; that respondents recover their costs herein expended."

There being, as thought, an issuable fact, a commissioner was appointed to take evidence and report the same to this court. Such evidence was taken and reported, and is here for what it is worth, if it is worth anything under the objections made to its introduction. Pertinent matters, both of evidence, and law, are left to the opinion.

I.  The first broadside launched is couched in this language:

"If the Act of the Legislature of Missouri for year 1919, page 672, of the Session Acts shall continue to receive the construction indicated by the cases
Constitutional Question.
of State ex rel. Brunjes v. Bockelman, 240 S. W. 209; State ex rel. McCaffrey v. Bailey, 272 S. W. 921, and O'Bryan v. Randolph County, 274 S. W. 356, then said Act of the Legislature, now Section 734, Revised Statutes 1919, is illegal, unconstitutional and

void, as violative of Section 12 of Article 9 of Constitution of Missouri.''

This provision is as follows: ''The General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose may classify the counties by population.''

We have purposely set out in full the pleadings of the respondent. Nowhere therein is the constitutionality of Section 734, Revised Statutes 1919, attacked. This is the statute which governs relator's salary, the Act of 1921 having been declared unconstitutional. [State ex rel. McCaffrey v. Bailey, 272 S. W. 921.]

Before a constitutional question can be raised, it must be timely advanced and presented to the court. As relator relied upon Section 734 as the law of his recovery, respondents should have by their return challenged the validity of the law, pointing out the constitutional provision which the law offended. This respondents did not do, and the question is not really in this case. [Lohmeyer v. Cordage Co., 214 Mo. l. c. 690; Hanks v. Hanks, 218 Mo. l. c. 674.]

It is a familiar rule that a case must be determined upon the issues raised by the pleadings. To this rule we compel the trial courts to adhere. To the same rule we should adhere in the disposition of an original proceeding here, where we are the triers of the facts as well as the law. In this case the first mention of the unconstitutionality of Section 734, Revised Statutes 1919, is made in the briefs, after the issues were made, the evidence taken, and the cause ready for submission to the court. So we say that the question is not within the issues made by the pleadings, and not really here for determination. But we have five or six of these cases before us, and to the end that the question may be determined, so that the rule may be made to apply to all of them (in some of which the question may have been properly raised) we shall now consider it once for all.

II. This Section 734, Revised Statutes 1919, comes from the Act of 1919 (Laws 1919, p. 672) and reads: "The number of inhabitants of any county shall, for the purpose of this section be ascertained by multiplying the whole number of votes cast at the last preceding Presidential election by five, until after the population of such county shall have been ascertained by the next decennial census of the United States."

*Classification.*

We ruled (and properly so) in State ex rel. Brunjes v. Bockelman, 240 S. W. 209, that the census of 1920 was not to be considered in determining the population, but that the population after January 1, 1921, must be determined under the last clause of said Section 734, by multiplying the whole number of the votes cast at the Presidential election in 1920 by five. From this ruling we see no reason to depart. The law (Sec. 734) is a uniform law as to the several classes created thereby. The classes are based upon population, and population has been uniformly recognized as a reasonable and constitutional basis for classification. The section of the Constitution urged is Section 12 of Article 9, which reads: "The General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose *may* classify the counties by population."

The General Assembly therefore had and has the constitutional permit to classify by population, because the organic law says that it *"may* classify the counties by population." The law must be uniform as to the several classes. But the General Assembly is not confined to population as a basis for the classification. For in Greene County v. Lydy, 263 Mo. l. c. 102, LAMM, J., has well said: "Observe, the Constitution in Section 12 [Article 9] uses the verb *may classify*. If it had meant there was no other valid method of making a law as to fees uniform in its operation except on the population theory, would it not have used the sign of another mood,

*shall?* . . . It is sufficient to rule that the 'population theory,' as a condition precedent in passing a validly uniform law regulating fees, as argued for appellant, is a permissible but not a necessary one.''

We think that Section 734, Revised Statutes 1919, is a valid classification by population, but even if it were not a classification by population, it would not be of necessity unconstitutional. In other words the lawmakers could take another basis for the classification, and if the law (using such different basis) was uniform as to the several classes created it would be valid. The lawmakers could take the Presidential vote as a basis of classification, or it could take any multiple of such vote as the basis of classification, and if this law was uniform as to the several classes no constitutional provision would be offended.

The law of 1919 (Section 734, supra) classifies by population, and then provides a means for determining population. The lawmakers could, without violating constitutional provisions, take the Federal census for the correct population, or it could provide for a state or local census to ascertain the population of the several counties, or instead of using any census the Presidential vote or any multiple thereof could be used as the estimated population for the purpose of classifying by population. The lawmakers can adopt any measure not prohibited by the Constitution, our Constitution being one rather of limitations than one of grants. It cannot be said that' an estimated population, where the same basis of estimate is used in all counties, would render the law bad because of lack of uniformity as to the several classes, or as to all the classes. This Act of 1919 has been on the books for some years, and the Bockelman case, supra, has been decided for some time. Had the divers county courts been as diligent before the Legislature, as they have been persistent here, they might have had relief from their imagined ills. However, it should be said that well-paid prosecuting attorneys are an asset to the State and the sundry counties rather a

detriment. A good salary not only bespeaks higher grade officials, but an ultimate saving of expense which must be met by the taxpayers.

III. A word more on the basis selected by the law makers for the fixing of salaries. Without doing violence to any constitutional provision such body (the lawmakers of the State) could use as a proper basis of legal classification (1) the population as determined by the United States Census, (2) the population as determined by a state or local census, (3) the Presidential vote of the respective counties, or any multiple of such vote. Section 12 of Article IX only requires uniformity as to the different classes made. Such uniformity as to the classes is and may be just as pronounced and apparent as it affects the several classes, if based upon a Presidential vote, or some multiple thereof, as if based upon an actual census. The classes may not cover the same counties respectively, as if actual census population were used, but there would be the same uniformity as to those counties falling into the several classes. Learned counsel overlook the fact that the lawmakers violated no constitutional provision in selecting an arbitrary method of determining population. This because actual population is not required for a valid classification. The lawmakers need not use population at all in classifying. The sole requirement of the Constitution is uniformity, and the Law of 1919 secures uniformity, whether the census figures be used, or the substituted estimate of population be used.

It is next contended that the word "votes" as used in Section 734, Revised Statutes 1919, means male votes. Again respondents have missed their forum. The Legislature is the place for them. All trouble could have been easily disposed of there, since the Bockelman case.

But going to the alleged legal phase of it. The language of the Act of 1919 (Sec. 734, supra), in so far as applicable to this discussion, reads: "The number of inhabitants of any county shall, for the purpose of this

*Votes.*

section be ascertained by multiplying the whole number of votes cast at the last preceding presidential election by five, until after the population of such county shall have been ascertained by the next decennial census of the United States.''

There is no ambiguity in this sentence from Section 734. Absent ambiguity courts are left to give to the act the meaning used therein. Thus in 36 Cyc. 1114, it is said: ''In the interpretation of statutes words in common use are to be construed in their natural, plain, and ordinary signification. It is a very well-settled rule that so long as the language used is unambiguous, a departure from its natural meaning is not justified by any consideration of its consequences, or of public policy; and it is the plain duty of the court to give it force and effect.''

So too, in more elaborate form, in 25 Ruling Case Law, pages 957 and 961, Sections 213 and 217 are an announcement of the rule, and the reasons therefor.

On the same question RAGLAND, J., in Grier v. Ry. Co., 286 Mo. l. c. 534, said: ''It is sometimes advantageous to recur to elementary principles. We deem it so now. The primary rule for the interpretation of statutes is that the legislative intention is to be ascertained by means of the words it has used. All other rules are incidental and mere aids to be invoked when the meaning is clouded. When the language is not only plain, but admits of but one meaning, these auxiliary rules have no office to fill. In such case there is no room for construction.''

The word ''votes'' is of plain significance, and is in no way dubious or doubtful in the connection where used. There is therefore no use for the consideration of extraneous matter, and a resort to the same would be improper. Were the words of the statute dubious or doubtful then we would have a different applicable rule.

IV. In addition to the fact that plain and unambiguous words require no construction, we have a fur-

ther matter in this case. This Act of 1919 was a general law, and the word "votes" as used therein consti-

**Votes.** tuted a general class, and such class might be increased by subsequent legislation, and must be considered as used with such contingency in view. The word "votes" means ballots cast by those authorized to vote by law. In other words ballots cast by legal voters. "Voters" is a general class, subject to increase and decrease by and through legislative acts. In the instant case the general class was increased by allowing the right of suffrage to women, a thing that was visible when the Act of 1919 was passed. But be that as it may be, the law of 1919 was a general law, and was dealing with a general class, which was subject to increase. Thus in 36 Cyc. 1235, it is said: "Where a statute is expressed in general terms and in words of the present tense it will as a general rule be construed to apply not only to things and conditions existing at its passage, but will also be given a prospective interpretation, by which it will apply to such as come into existence thereafter."

In 25 Ruling Case Law, Section 24, page 778, the general rule is thus stated: "A general law may, and frequently does, originate in some particular case or class of cases which is in the mind of the Legislature at the time, but so long as it is expressed in general language the courts cannot, in the absence of express restrictions, limit its application to those cases, but must apply it to all cases that come within its terms and its general purpose and policy. Hence statutes framed in general terms apply to new cases that arise, and to new subjects that are created, from time to time, and which come within their general scope and policy. It is a rule of statutory construction that legislative enactments in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects and business within their general purview and scope coming into existence subsequent to their passage."

But we are not left to general principles altogether, although such would suffice. The precise point, or perhaps an analogous point, has been several times ruled since the adoption of the Nineteenth Amendment giving to women the right to suffrage.

In Pennsylvania the general law (Act of 1867) as to jurors provided that the jury commissioners should select "from the whole qualified electors of the respective county, at large, a number (such as designated by the court) of sober, intelligent and judicious persons to serve as jurors," etc. In discussing that matter the Supreme Court of that state, 114 Atl. l. c. 829, said:

"We then have the Act of 1867 constitutionally providing that the jury commissioners are required to select 'from the whole qualified electors of the respective county . . . persons, to serve as jurors in the several courts of such county,' and the Nineteenth Amendment to the Federal Constitution putting women in the body of electors.

" 'The term "elector" is a technical, generic term, descriptive of a citizen having constitutional and statutory qualifications that enable him to vote, and including not only those who vote, but also those who are qualified, yet fail to exercise the right of franchise.' [20 C. J. 58.]

"If the Act of 1867 is prospective in operation, and takes in new classes of electors as they come to the voting privilege from time to time, then, necessarily, women, being electors, are eligible to jury service. That the Act of 1867 does cover those who at any time shall come within the designation of electors there can be no question.

" 'Statutes framed in general terms apply to new cases that arise, and to new subjects that are created from time to time, and which come within their general scope and policy. It is a rule of statutory construction that legislative enactments in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects, and business within their general purview

and scope coming into existence subsequent to their passage.' [25 R. C. L. 778.]

"Summing up, we conclude: (1) There was no absolute and fixed qualification of jurors at common law, and from very ancient times their qualifications were fixed by act of Parliament; (2) the qualification of jurors was not the thing spoken of by the section of the Constitution under consideration; (3) the words 'as heretofore' in the section refers to the kinds of cases triable before juries and the trial, not the qualifications of the jurors; (4) the designation 'qualified elector' embraces all electors at the time jurors are selected from the body of electors; (5) the term 'electors' embraces those who may be added to the electorate from time to time."

See also Ex parte Mana, 172 Pac. 986; State v. Hays, 78 Mo. 600; State v. Cleveland, 83 Ohio St. 61; 21 Ann. Cases, p. 1284, and note. We therefore rule that the term "votes" as used in Section 734, Revised Statutes 1919, supra, being a general term, and the statute being prospective in operation, and a general statute, women dropped into the class when they attained the right of suffrage, and the word "votes" covers the votes of women as well as those of men.

But how easy all these alleged grievances could have been remedied by the Legislature, in the two terms subsequent to the Bockelman case, had such body desired to change the law.

V. It is also further contended that the salary Act of 1921 is valid, and therefore relator is not entitled to his writ. What we have said heretofore sufficiently answers this proposition. We have considered both the acts of 1919 and 1921 from all angles. We see no reason to change our views as to the Act of 1921. [State ex rel. Brunjes v. Bockelman, 240 S. W. 209; State ex rel. McCaffrey v. Bailey, 272 S. W. 921; O'Bryan v. Randolph County, 274 S. W. 356.]

We trust this question may be considered settled.

VI.    We have left in this case the plea of estoppel. This is properly divided in two parts.  First, it is claimed that because relator filed his additional claim for $1250 for the first six months of 1921, and did not file claims for any more pay over and above $2500 per year until after his second term of office expired, he is now estopped from claiming what the law allowed.  During all this time the constitutionality of the Act of 1921 was being questioned.  Such was argued and briefed in the Brunjes case, supra, and in effect passed upon therein, but not specifically ruled.    Interested parties questioned the ruling in that case as being determinative.  It was later decided upon appeal in specific terms in State ex. rel. McCaffrey v. Bailey, 272 S. W. 921.  The circuit courts were properly construing State ex rel. Brunjes v. Bockelman, 240 S. W. 209. [See State ex rel. v. Bailey, supra, and State ex rel. v. Randolph County, 274 S. W. 356.]  In each of these cases the circuit court held in effect that the Act of 1921 was invalid, but the county courts were persistent, and appealed in these two cases, resulting in the specific ruling in those two cases.  About this time relator here filed his suit.  He was evidently awaiting a specific ruling.

*Estoppel: Delay.*

So far as the question of estoppel is concerned by reason of the filing of the $1250 claim, and failing to further file claims, the cases of State ex rel. Moss v. Hamilton, 260 S. W. 466, and State ex rel. v. Dearing, 274 S. W. 477, settle the question adversely to the contention of respondents.  These cases are so recent that a mere reference to them is sufficient.

Next it is contended that after the relator retired from office, there were the two cases, named in the pleadings, pending against the county, and there was a contract made with relator to assist in the defense of those cases.  This contract reads:

"State of Missouri, County of Johnson, ss.

"County Court of Said County, February Term, 1925.

"In consideration of services to be rendered by Walter L. Chaney, attorney at law, in the suit or action at law now pending in the Circuit Court of Johnson County, State of Missouri, State of Missouri ex rel. Johnson County v. John L. DesCombes, Administrator of the Estate of L. R. Katherman, Deceased, et al., to collect moneys due from John L. DesCombes, administrator as aforesaid and the bondsmen of said L. R. Katherman, deceased, former collector of Johnson County, Missouri, for the recovery of amounts due under said bond; and for the further consideration of services to be rendered by said Walter L. Chaney, attorney at law, in the suit or action at law now pending in the Circuit Court of Johnson County, Missouri, in the case of J. M. Caldwell v. Johnson County, for claimed back pay or salary, said to be due and payable to said J. M. Caldwell, in the trial of said causes in the circuit court; the County of Johnson by and through its county court, in regular session convened, agrees and obligates itself to pay to said Walter L. Chaney the sum of two hundred and fifty dollars, after the termination of said cases, and for necessary expenses that may be incurred by said Walter L. Chaney in the preparation for trial and in the trial of said causes of action as aforesaid, subject to the approval of the county court.

"Made in duplicate this 3rd day of February, A. D. 1925.

"J. R. GRINSTEAD,

"Agent for Johnson County, Missouri.

"WALTER L. CHANEY."

In the face of the record entry of the court authorizing the contract, and in the face of the contract itself, the respondents offered themselves as witnesses to show that Chaney was not only to defend these two cases for $250, but that he agreed not to sue the county for back or additional salary. All this testimony was objected

to by relator upon the grounds (1) that they could not impeach the court record in this way, and (2) that, whatever the talk between relator and respondents may have been, the contract (made afterward) is the only contract upon which respondents can rely, because all the subject-matter is presumed to have been finally merged in the written contract. The testimony offered tended to show what respondents contend, but was objected to as aforesaid, and is before us upon such objections. The evidence shows that although relator has tried the two cases, the respondents have never paid him a cent. The additional question of estoppel or waiver we take next.

VII. All this evidence, whether by members of the county court or others, which tended to impeach the record of the court, or vary the terms of the written agreement was incompetent, and it is useless to encumber the opinion with the explanatory evidence given by Mr. Chaney, the relator herein.

Estoppel by Contract.

County courts (Sec. 2323, R. S. 1919) are courts of record, and can only speak by their record. The record sets out and recites the contract to be made with Mr. Chaney. This oral evidence only goes to alleged oral statements prior to the court record, and prior to the written contract entered into pursuant to the terms of the court record. These oral statements if such there were, are inadmissible to impeach and overthrow the solemn record of the county court. [Decker v. Diemer, 229 Mo. l. c. 322; Nodaway County v. Williams, 199 S. W. l. c. 227.] In the latter case RAILEY, Commissioner, with a wealth of authorities supporting him, says:

"It is contended by appellant that the conversation between Talbott and the presiding judge of the county court, on June 12, 1888, when Williams was declared insane and sent to the asylum, was, and is, sufficient to overturn the record of said court. This contention cannot be sustained under the law. The county court can

only speak through its record, and the latter cannot be impeached or overturned by conversations had between the judges of said court and other parties.   [Summers v. Cordell, 187 S. W. l. c. 9; County of Johnson v. Wood, 84 Mo. 489; Mobley v. Nave, 67 Mo. l. c. 549; Maupin v. Franklin County, 67 Mo. 327; Reppy v. Jefferson County, 47 Mo. 66; Dennison v. County of St. Louis, 33 Mo. 168; Milan v. Pemberton, 12 Mo. 598; Medlin v. Platte County, 8 Mo. l. c. 238, 40 Am. Dec. 135.]

"We are not advised as to why counsel for respondent, in the light of foregoing authorities, failed to interpose an objection to the conversation between the judges and Talbott, when the order of the county court was made.   The legal effect, however, of said conversation, must be determined by the court, although introduced in evidence without objection.   [McAlister v. St. Joseph Street Const. Co., 181 S. W. l. c. 59; State v. Arcadia Timber Co., 178 S. W. l. c. 95; Sanders v. Southern Electric Ry. Co., 147 Mo. l. c. 425, 48 S. W. 855; Pettis County v. Gibson, 73 Mo. 502; Bartlett v. O'Donoghue, 72 Mo. l. c. 564; McMillan & Parker v. Ball & Gunning Milling Co., 190 Mo. App. l. c. 347, 177 S. W. l. c. 317; Minter Bros. v. South Kansas Ry. Co., 56 Mo. App. 282; State v. Kaufman, 45 Mo. App. 656.]

"Conceding that the conversations detailed by witness Talbott between himself and members of the county court actually occurred as stated, and that said conversations were given in evidence without objection in this cause, we are compelled to hold, under the array of authorities heretofore cited, that said conversations are insufficient to overturn or contradict the order and judgment of the county court, heretofore set out.

"Upon a careful examination of the record and proceedings before us, we are satisfied with the conclusion reached by the trial court, and accordingly affirm its judgment."

In the case at bar we have proper and timely objections to this testimony, and under authority we must sustain said objections.   The court record cannot thus be

impeached, and this record is silent as to any agreement of relator to forego his legal rights to over $8,000, in order to procure a petty employment in two cases for $250. Such condition cannot be put into the record contract by evidence *aliunde,* of matters preceding the record entry.

In addition the settlement of any claims of relator for unpaid salary is and was a proper matter for contract, but such contract must be in writing in order to be valid and binding. [R. S. 1919, sec. 2164.] This statute reads:

"*No county,* city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, *including the consideration,* shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing."

It required court action to direct the making of a county contract, and such contract must conform to the directions contained in the court record in order to be valid. In this case there was a proper record entry, and a written contract duly executed in conformity with the court order. But note this statute just a moment. Not only must the contract be in writing, but the statute says: "and such contract, *including the consideration,* shall be in *writing,* and dated when made, etc." The consideration, under the statute, must be in writing. The contract, *including the consideration,* between the county and relator was in writing, but the release of the payment of back salary is not *written* in the contract as a part of the consideration for the contract. So under the very terms of the contract and the statute, this evidence is incompetent, in that it tends to show a verbal contract and a verbal expression of consideration, when

the statute requires both the contract and the consideration thereof to be *expressed in writing.* This should suffice.

But in addition to this, evidence of previous talks, i. e. talks prior to the making of a written agreement, is not competent to impeach the written instrument, because all previous matters are presumed to have been fully threshed out, and merged into the written contract and such written contract is presumed to express the final understandings of the parties. Attempts to prove such matters on the theory that they constituted inducements for the contract have been condemned by this court. Such things cannot be engrafted upon a plain written contract [Pearson v. Carson, 69 Mo. 550; County of Johnson v. Wood, 84 Mo. 489; Tracy v. Union Iron Works, 29 Mo. App. 342; Tracy v. Union Iron Works (same case to the Supreme Court upon certification) 104 Mo. 193.]

The instant case comes from Johnson County. That county has been here before in County of Johnson v. Wood, 84 Mo. 489, supra. The seventh syllabus of the opinion (which correctly outlines the opinion upon the point) reads: "A contract made with a county court must be proved by the record alone and cannot be varied, contradicted or enlarged in its terms by oral evidence of the intention of the judges."

The other cases cited, supra, are pertinent to the claim of respondents that the evidence was competent upon the theory that it showed the inducement for the contract. These cases are contra to contention of respondents, and are well founded. All the evidence offered by respondents was wholly incompetent, and must be excluded from consideration, in this an original proceeding.

From it all it is clear that our alternative writ of mandamus should be made permanent, and it is so ordered. All concur.