STATE EX REL. W. W. SUNDERWIRTH, RESPONDENT, v. E. C. HARPER ET AL., APPELLANTS.—30 S. W. (2d) 1039.

Kansas City Court of Appeals. May 26, 1930.

*DeArmond & Maxey* for appellants.

*D. C. Chastain* and *J. R. Hales* for respondent.

BOYER, C.—Proceeding in mandamus. The case is here on appeal from the judgment of the circuit court of Bates County wherein a peremptory writ was issued to the judges of the county court directing them to issue warrants to pay relator the salary claimed by him as prosecuting attorney of said county.

The petition was filed May 29, 1929, and in effect alleges that respondents below (Harper et al.) are the duly elected, qualified, and acting justices of the county court of Bates County; that relator was on November 6, 1928, elected prosecuting attorney of said county; that he was duly commissioned and qualified as such and on January 1, 1929, entered upon the duties of said office and performed same until the date of filing the petition, and is still faithfully continuing to discharge the duties of said office. The petition refers to section 734 and section 11016, Revised Statutes 1919, and the bearing of same on the question and method of determining the salary of the prosecuting attorney; and further states that the highest number of votes cast at the last presidential election held in Bates County was 10,022, which number multiplied by five determines a population of 50,110 for Bates County, and that on this basis the statutes of the State fix the salary of the prosecuting attorney of said county at $5000 per year. It is further alleged that on the first days of February, March, April, and May 1929, relator duly presented to the county court a statement of account for his services for the months of January, February, March, and April respectively, in the sum of $416.66, the same being

the amount due him as prosecuting attorney of said county for each of said months; that he demanded that said county court audit and allow said respective amounts and issue warrants therefor, which said court refused and still refuses to do; that the total amount due for said months is the sum of $1666.66, less the sum of $833.33 heretofore paid; that $833.33 remains due and unpaid, and that said county court has failed and still fails and refuses to allow same and to issue warrants therefor; and that petitioner has no other adequate remedy than mandamus and prays the issuance of such a writ against said judges commanding that they forthwith audit and allow his demands and issue warrants for same, or show cause why they have not done so.

An alternative writ was granted and respondent judges duly filed return in which it is admitted that they are the judges of said county court as alleged, and that relator is now and has been since January 1, 1929, the duly elected, qualified, and acting prosecuting attorney of said county. It is further alleged in the return, in effect, that under the proper construction of the law applicable the salary of the prosecuting attorney is limited to the sum of $2500 per annum; that he has been paid all that is due him upon that basis; that under the method provided by law for determining the population in order to fix the salary, Bates County did not have a population in excess of 50,000, and that the whole number of votes cast at the last presidential election was not 10,022; that relator presented to respondents for the months of January, February, March, and April, 1929, his claims and accounts for salary in the amount of $416.66 per month for each of said months, and that said accounts were duly examined by respondents as the county court of Bates County and were by said court found excessive and incorrect; that said court found that relator was entitled to a salary of $2500 per annum, and that warrants were issued and delivered to relator for the sum of $208.33 for each month and that said amount was all that relator was entitled to receive; respondents deny that they have failed to perform any duty enjoined upon them by law and allege that relator has a complete and adequate remedy at law. The return, answer to return, and the reply to the answer contain extended statements in reference to matters of law. They are argumentative and in the nature of briefs to support the contention of the respective parties that the salary of the prosecuting attorney is fixed either at $5000 or at $2500 as claimed by relator and respondents. We do not deem it necessary to make further reference to them.

At the hearing of the cause relator testified, in addition to other facts, that he had submitted to the office of the attorney-general of the State a request for an opinion and received an opinion from the attorney-general's office upon the subject of his salary, which opinion was furnished respondents; and which said opinion, being in the form

of a letter to relator signed by an assistant attorney-general and approved by the attorney-general, was offered and received in evidence over the objection of respondents. The letter stated that at the November 1928 election candidates for governor, lieutenant governor, secretary of state, and prosecuting attorney received a total vote in excess of 10,000, and gave the total vote for all candidates for the respective offices, and advised that in the opinion of "this department" the annual salary of relator was $5000. It was agreed that relator presented his claim to the county court for $416.66 for each month's service as prosecuting attorney and that the county court allowed his claims in the sum of $208.33 for each month, which amount was paid to and received by relator. It is agreed that the whole number of votes cast in Bates County at the November 1928 election for candidates for some state officers was in excess of 10,000, and that the whole vote cast for presidential electors was less than 10,000.

Respondent offered in evidence the following record entry of the county court of Bates County dated February 1, 1929.

"Now on this day comes W. W. Sunderwirth, prosecuting attorney, and presents to the court a bill for $415.15 per month for his salary, which is at the rate of $5000 per year.

"The court refuses to pay the same and ordered that a warrant be drawn for $208.33, the same as the salary of the prosecuting attorney has been."

Relator testified that he did not know that the county court had examined his claims, and that he was not present when his claim was examined and discussed. Upon the evidence and the pleadings the court granted the peremptory writ.

### Opinion.

Appellants contend first that mandamus does not lie because relator had an adequate remedy by way of appeal from the order of the county court denying his claim and fixing the amount due; that the determination of this amount was a judicial act on the part of the county court which cannot be controlled by mandamus; that the county court discharged its ministerial duty and acted judicially in ascertaining the amount due relator, and that it cannot be compelled to change its judgment by mandamus. Numerous cases are cited which sustain the general proposition that mandamus will not lie unless relator has a clear right and no other specific legal remedy; that the writ is used to compel the performance of ministerial acts, or is addressed to subordinate judicial tribunals requiring them to proceed to exercise their functions and give judgments in cases before them; that it will not lie to compel inferior tribunals to give a particular judgment; and that when a subordinate tribunal acts judicially, it may be compelled to proceed, but it will be left

to decide and act according to its best judgment, and in such case the party aggrieved has a remedy either by appeal or writ of error; that the writ will issue to coerce action, but not to regulate or control discretion reposed by law in an official while acting. It may be conceded that such is the law, but it does not follow that mandamus is an improper remedy in this case. The case of State ex rel. v. County Court of Jackson County, 17 S. W. (2d) 572, is distinguishable on the facts from the one now under consideration. There was a question of fact in that case which the county court had a right to investigate and pass upon, and which was relevant and material in fixing the amount of debt, if any, which might be due. That case and others cited by appellant are not persuasive, decisive or controlling in the instant case.

The Supreme Court has in like cases and in many instances assumed jurisdiction and passed upon questions similar to the one involved in this appeal in determining the amount of salary due a prosecuting attorney, circuit clerk, highway engineer, and others, some of which cases are the following: State ex rel. v. Bockelman, 240 S. W. 209; State ex rel. v. Grinstead, 314 Mo. 55, 282 S. W. 715; State ex rel. Lamm v. McCurdy, 282 S. W. 722; State ex rel. James v. McCurdy, 282 S. W. 724; State ex rel. Rucker v. McCurdy, 282 S. W. 724; State ex rel. Hulen v. Johnson, 282 S. W. 724; State ex rel. Sperry v. Beaty, 282 S. W. 725; State ex rel. Hart v. Ludden, 285 S. W. 421; State ex rel. Summers v. Hamilton, 312 Mo. 157, 279 S. W. 33; State ex rel. Koehler v. Bulger, 289 Mo. 441, 233 S. W. 489. In all of the foregoing cases the question of the amount of salary due a public officer under the statutes of the State and whether the county court should be required to pay same was determined by an action in mandamus. We think the same question and no other is presented in this case.

In the case of State ex rel. Summers v. Hamilton, supra, l. c. 172, the court had before it a similar question in respect to the salary due the circuit clerk under the law, and there said:

"The county court was simply required, in the performance of a purely ministerial act, to issue warrants to relator for his monthly salary, based on the population of said county, as determined under the foregoing law. In so doing, it was not acting judicially."

From the above declaration there can be no room for doubt, that the order of the county court in this case fixing the amount which it found to be due relator at a sum less than that allowed by law was of no binding force or effect upon him. It was not a judgment and relator was not required to accept it as such and to exercise the alleged remedy of appeal. It was the duty of the court to allow him the salary permitted by law and to issue its warrants for the same, and these acts are not of a judicial nature, but are purely ministerial.

We hold under the foregoing authorities that mandamus is a proper remedy in this case.

The real issue and contest between the parties as shown by their pleadings, briefs, and arguments is over the correct meaning and application of section 734, Revised Statutes 1919. That section, omitting irrelevant parts, reads as follows:

"On and after the first day of January, 1921, the prosecuting attorney shall receive for his services per annum, to be paid out of the county treasury . . . ; in all counties having a population of thirty thousand and less than fifty thousand inhabitants, the sum of twenty-five hundred dollars ($2500) ; in all counties having a population of fifty thousand and less than seventy thousand inhabitants the sum of five thousand dollars ($5000) . . . ; to be paid monthly upon the warrant of the county court issued in favor of the prosecuting attorney to the county treasurer for that purpose. The number of inhabitants of any county shall, for the purpose of this section be ascertained by multiplying the whole number of votes cast at the last preceding presidential election by five, until after the population of such county shall have been ascertained by the next decennial census of the United States."

The contest is over the meaning of the language contained in the last sentence and particularly in reference to the meaning of "the whole number of votes cast at the last preceding presidential election." Appellants insist that "the whole number of votes cast" means the whole number cast for presidential electors alone, while respondent contends that it means the total number of ballots cast for all candidates for any office at that election. It is agreed that the total number of votes cast at the November 1928 election for presidential electors was less than 10,000, and that the whole number of votes cast at the same time for all candidates for a number of state offices was in excess of 10,000. Appellants argue that a "presidential election" is a specific, separate, and different election than that of any other, and that these words signify the intent and meaning of the legislature that the vote to be used as a basis for determining population was the whole number of votes cast for presidential electors and not the whole vote cast at that election for candidates for any other office. The contention of respondent is that the true meaning of the last sentence in the statute is that the whole number of votes cast for candidates for any office at the *time* of holding the presidential election referred to is the vote which is to be multiplied by five as a means of determining population. The same issue is briefed under a variety of points made by appellants, who also assert that the presidential election referred to in the section means that of 1920, at which said time the whole number of votes cast for the candidates for any office was less than 10,000.

Appellants urge that it was the intention of the legislature to fix a method of determining population based upon the vote cast for presidential electors in 1920 for a period of ten years and that such is the holding and meaning of the case of State ex rel. v. Bockelman, 240 S. W. 209, and by what is said in reference to that case in the case of State ex rel. v. Grinstead, 282 S. W. 715. The Bockelman case was determined in April, 1922, and while it was held in that case that the presidential election referred to was the election of 1920, and that the words of the statute referring to the next decennial census meant the census of 1930, there was no holding or determination that the vote cast at the presidential election of 1920 was to be the continuing and determinative vote until the next decennial census, regardless of any intervening presidential election. We do not consider that the statute in question was construed or intended to be construed in any such manner. Nor is there anything in the case that would preclude a construction of this statute to mean that the basis of determining the population may not change at any quadrennial period indicated as a presidential election between 1920 and 1930. We construe the statute to be prospective and to contemplate a change in the basis of establishing population according to the change in the whole number of votes that may be cast at the *time* of any presidential election prior to 1930; and that the meaning of the words "the last preceding presidential election" means that election which has occurred next before the time at which the occasion or necessity arises for determining population; and as applied to the facts and issues in this case it means the November, 1928 election. We conclude that the legislative intent in section 734 was the same as that expressed in section 10995, Revised Statutes 1919, fixing the salary of circuit clerks, in which it is provided that "for the purpose of this section the population of any county shall be determined by multiplying by five the total number of votes cast in such county at the last presidential election prior to the time of such determination."

In the case of State ex rel. v. Grinstead, 314 Mo. 55, a controversy arose over the meaning of the word "votes" as used in said section 734, and what is said there in reference to including a new class of voters created subsequent to the enactment of the section is by analogy applicable, and sustains our conclusion that the last preceding election means the one next preceding the time when the salary is to be determined. The Supreme Court of California in the case of Robbins v. Anderson, 147 Pac. 1182, and the Supreme Court of Nevada in the case of State ex rel. v. Woodburn, 32 Pac. 1006, ruled in the same way upon a similar question of construction.

We revert to the other main contention of appellants that under the terms of the statute the number of votes cast for presidential electors is the vote that is controlling, and not the whole number of

votes which may be cast for other candidates for a given office at the last preceding presidential election. As we view it we cannot so construe the statute without failing to give effect to the plain meaning of the words used and without doing violence to the manifest intention expressed therein. Witness these words:

"The number of inhabitants of any county shall, for the purpose of this section be ascertained by multiplying the whole number of votes cast at the last preceding presidential election by five."

If the lawmakers had intended to limit the count to the whole number of votes cast for presidential electors it seems to us that they would have said so, and when they said "the whole number of votes cast at the last preceding presidential election" they meant the total number of ballots cast for candidates for any office at a stated time to-wit: at the time of the holding of a presidential election. Votes mean ballots cast by legal voters, and "the whole number of votes" means the total number of ballots cast at the time indicated. So construing section 734, it is rendered consistent with section 11016, referred to as one of general application, and providing the means of determining the population of a county as a basis for ascertaining the salary of any county officer; and such construction renders it uniform in method with section 10995 and with section 11354, and in conformity with section 12, article 9 of the State Constitution.

In the case of State ex rel. Summers v. Hamilton, 312 Mo., l. c. 170, section 10995, Revised Statutes 1919, providing for the salary of circuit clerks was under consideration and the court said:

"Turning to section 11016 of article 2 of chapter 100, Revised Statutes 1919, heretofore quoted, we find that it is consistent with section 10995, Revised Statutes 1919."

And on the following page of the opinion reference is made to section 734 applicable to prosecuting attorneys, and to section 11016, and the court said:

"Both sections provide, in legal effect, that the salaries of prosecuting attorneys shall be determined by multiplying the whole number of votes cast at the last preceding presidential election by five."

In consideration of all the foregoing we are impelled to the conclusion that, inasmuch as the total number of votes cast in Bates County at the November, 1928 election exceeded 10,000, the population of said county would be determined to be in excess of 50,000 for the purpose of fixing the salary of the prosecuting attorney for his term beginning January 1, 1929, and that he is entitled to receive compensation on the basis of $5000 per annum.

The controlling statute in this case is applied as written and without regard to opinion as to what it should be. Judicial intrusion upon the legitimate exercise of legislative power is not permitted. The

wisdom or justice of a valid statute may be appropriately questioned in the legislative forum.

The foregoing has disposed of all of the points and contentions made by appellants, and of the issue in this case, except the undeveloped point that the court erred in admitting in evidence the opinion of the attorney-general. It would appear that under certain circumstances the construction of statutes by public officials, including the attorney-general, is permissible as advisory evidence. State ex rel. v. Fendorf, 296 S. W. 787. Whether the opinion of the attorney-general was properly admitted in evidence in this case we do not determine for the reason that it is of no consequence in the result reached. On the pleadings and admitted facts the conclusion and judgment of the learned trial court was right. It results that the judgment should be affirmed. The Commissioner so recommends. *Barnett, C.,* concurs.

PER CURIAM:—The foregoing opinion by BOYER, C., is hereby adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.,* absent.