THE STATE ex rel. GEORGE S. SUMMERS, Clerk of Circuit Court of Crawford County, v. GEORGE B. HAMILTON et al., Judges of County Court of Crawford County.

Division Two, December 22, 1925.

1. **CONSTITUTIONAL LAW: Salaries of County Officers: Uniform Operation.** Section 12 of Article IX of the Constitution, declaring that "the General Assembly shall, by a law uniform in its opera-

tion, provide for and regulate the fees of all county officers, and for this purpose may classify the counties by population," is mandatory, and requires the enactment of a statute regulating uniformly the fees of all county officers, including circuit clerks, county clerks, prosecuting attorneys, etc.; and if the statute undertakes to regulate their compensation according to population it must, in order to be uniform in its operation, require the county court, in determining the salary to which any one county officer is entitled, employ the same method of ascertaining the population of the county which is employed in determining the salaries of all other county officers.

2. ———: Title: Wrong Article and Chapter: Act of 1921: Salary of Circuit Clerk. The Act of 1921 (Laws 1921, p. 606), whose title is "an act to amend Section 10995, Article 2, Chapter 123, Revised Statutes of Missouri, 1919, by striking out certain words and inserting other words in lieu thereof, making a new rule for determining the salary of clerks of circuit courts," etc., and in the body of the act declaring that "Section 10995, Article 2, Chapter 123, Revised Statutes of Missouri, 1919, be and the same is hereby amended," etc., is void for uncertainty, because Article 2 of Chapter 123 relates solely to "Depositories of State Moneys" and does not directly or indirectly refer to circuit clerks or their salaries, although said Section 10995, which is a part of Article 2 of Chapter 100, does relate to salaries of circuit clerks in certain counties. Said act being void, the salary of a circuit clerk is to be ascertained from Sections 10995 and 11016, both of which are found in Article 2 of Chapter 100, and are consistent, and require that the population of the county be ascertained by multiplying by five the highest number of votes cast at the last previous general election.

3. SALARY: Acceptance of Less Sum: Accord and Satisfaction: Estoppel. The doctrine of equitable estoppel has no application to a partial payment of a statutory debt. The county court is not vested with power to compromise the rights of the circuit clerk or to compel him to accept a salary less than the law allows him, but an order fixing his salary is a purely ministerial act, and not judicial; and having made an order fixing his salary according to a void statute, at an amount less than the amount to which he was entitled by valid statutes, his acceptance of monthly warrants for said less amount does not estop him to claim the balance due him under the valid statutes. Estoppel is not pertinent as a defense to a mandamus suit to compel the county court to issue warrants for the unpaid balance.

Clerks of Courts, 11 C. J., Section 32, p. 864, n. 43; Section 55, p. 882, n. 26 New; Section 83, p. 890, n. 82. Courts, 15 C. J., Section 272, p. 900, n. 97. Estoppel, 21 C. J., Section 192, p. 1190, n. 7. Statutes, 36 Cyc, p. 969, n. 90; p. 992, n. 90; p. 1016, n. 74; p. 1066, n. 91.

### Mandamus.

WRIT MADE ABSOLUTE.

*Gratia Woodside Monegan* for relator.

(1)  The Act of 1921, Laws 1921, p. 606, attempting to regulate the salary of circuit clerks, is unconstitutional and should not have been followed by the county court in determining the relator's salary.  Art. 12, sec. 9, Mo. Const.  It was the duty of the Legislature to pass a law that would regulate the fees of all county officers, and that law was required to be uniform in its operation. This provision is mandatory and a law passed which does not comply with it is void.  State ex rel. McCaffrey v. Bailey, 304 Mo. 444; State ex rel. Moss v. Hamilton, 303 Mo. 302.  (2)  Sec. 11016, Ch. 100, R. S. 1919, is general and uniform in its operation and provides that the population of any county shall be determined (for the purposes of ascertaining the salaries of county officers) by multiplying the vote cast at the last general election by five.  This section was not referred to in any way by the amendment of 1921.  And this law is in effect until amended by the Legislature.  Secs. 10995, 11016, Ch. 100, R. S. 1919.  (3)  If a law operates upon all persons alike who come within its scope it is general and not subject to the denunciation of Sec. 53, Art. 4, of the Constitution, but if upon the other hand it operates only upon a portion of such persons it is a special law and subject to the inhibitions of said constitutional provision. State ex rel. v. Taylor, 224 Mo. 447.  A statute which relates to persons or things as a class is a general law while a statute which relates to particular things or persons of a class is special and that classification does not depend upon numbers.  State ex rel. Lionberger v. Towle, 71 Mo. 650.  (4)  The Constitution provides that no law shall contain more than one subject which

shall be clearly expressed in its title. Sec. 28, Art. 4, Mo. Constitution. It cannot be said that in attempting to amend Chapter 100, the title of the act denominating it Chapter 123, clearly expressed the subject. (5) There is no merit in the contention that the judges of the county court having fixed the salary of the circuit clerk immediately following the presidential election, it was fixed and determined for a period of four years, and that it could not be changed. (a) No action of the county court in fixing and determining the relator's salary at a wrong amount is so binding upon relator as to preclude his recovery of the balance of the amount due him. State ex rel. Moss v. Hamilton, 303 Mo. 302. Transactions between public officials as to public funds are governed by the laws and statutes prescribing the duties of such officials. A mistake upon the part of one of them whether as to law or as to fact, is open to question and must be rectified, so as to conform to the requirements of the law. State ex rel. Moss v. Hamilton, supra. (b) There is nothing in this case that would estop relator from demanding and receiving from the County of Crawford the full legal salary due him. Relator was bound under penalty to pay the fees of the office into the county treasury at the end of each month. And the court was equally bound to pay relator his lawful salary at the end of each month. R. S. 1919, sec. 11021. Receiving a part of his salary would not constitute an estoppel against relator so as to prevent him claiming the balance due him. Burke v. Murphy, 272 Mo. 411; United States v. Langston, 118 U. S. 389. (c) The essential element of equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared. That is, the person setting up the estoppel must have been induced to alter his position in such a way that he will be injured if the other person is not held to the representation on which the estoppel is predicated. State ex rel. Moss v. Hamilton, 303 Mo. 302; Driskell v.

Masters, 31 Mo. 325; Kline v. Croeschner, 280 Mo. 613; Lamar Township v. Lamar, 261 Mo. 171; State ex rel. v. Scott, 270 Mo. 153. (6) *Res adjudicata* does not apply in this case. In order to have a former adjudication of the matters in this suit, there must have been a court of competent jurisdiction before whom the matters in controversy have been submitted, trial had and judgment rendered. 23 Cyc. 1219. It is a well-settled doctrine in this State that settlements with a county court are not judicial proceedings. Scott ex rel. Christian Co. v. Leftwich, 145 Mo. 32; Marion Co. v. Phillips, 45 Mo. 75; Sear v. Stone, 105 Mo. 242; Cole v. Dallmeyer, 101 Mo. 57; Carroll Co. v. Roberts, 62 Mo. 388; Carroll Co. v. Roberts, 60 Mo. 404.

RAILEY, C.—On June 5, 1925, George S. Summers, Clerk of the Circuit Court of Crawford County, Missouri, as relator, filed in this court an application for a writ of mandamus, to compel George B. Hamilton et al., as judges of the County Court of Crawford County aforesaid, to issue warrants on the county treasurer of said county for the sum of $700, the amount claimed to be due him on his salary for the years 1923 and 1924, and for the sum of $29.17 per month for the time he has served during the year 1925, in settlement of the balance claimed to be due him on his salary as clerk aforesaid, and for such other relief as may be proper, etc.

The petition alleges that relator was elected Clerk of the Circuit Court of Crawford County, at the November election, 1922; that he duly qualified as such officer and has discharged all the duties thereof from the first day of January, 1923, to the commencement of this action, on June 5, 1925; that respondents are the judges of the County Court of Crawford County aforesaid; that under the law during the period aforesaid it was the duty of relator to pay to the county treasurer of said county all the fees that accrued in his office as clerk aforesaid, and that he faithfully performed said duty;

that under the law it was the duty of respondents to pay relator monthly from the county treasury his salary as such clerk; that said salary was based by law on the population of the county and that said population should have been ascertained by multiplying the vote cast at the last Presidential election prior to the time of such determination, by five; that at the Presidential election of 1920, held in November of said year, there were cast in said county 4,359 votes, which, multiplied by five, would make 21,795, the population of said county upon which to fix the salary of relator as clerk aforesaid; that at the Presidential election in 1924, there were cast 4,189 votes, which, multiplied by five, would make the population of said county 20,945 upon which to base the salary of said clerk; that under the law in counties having a population of 20,000 and less than 25,000, during all the term of service of said relator as such clerk, the salary of the clerk of the circuit court was $1950 per annum, and during all the time of the service of the relator as such clerk his salary was fixed by law at $1950 per annum; that respondents have refused to pay relator his salary as such clerk at the rate of $1950 per annum, but on the contrary have paid him as salary at the rate of $1600 per annum; that relator was ignorant of the population of said county and of the amount of salary that was due him, and that he took and received his salary as aforesaid at the rate of $1600 per annum, without any intent on his part to waive any rights which he had, or might have, to receive a greater salary than that offered him by the county court; that there was no settlement whatever of the matter between him and the county court, but the latter simply caused to be issued to him warrants at the rate of $1600 per annum, and relator took the same in ignorance of the amount due him; that there is now due relator the sum of $700, on his salary for the years 1923 and 1924, and $29.17 per month for the time that he has served as such clerk in the year 1925; that relator has made demand from the said County Court of Crawford County

for the payment of the same, but said county court has failed and refused to pay the same to relator; that he is informed that said county court bases its refusal to pay him his salary at the rate of $1950 per annum, on an act passed by the Legislature and approved April 1, 1921, under which it was provided that, for the purposes of said act, the population of any county should be determined by multiplying by three and one-half the total number of votes cast in such county, at the last Presidential election prior to such determination; that in determining the population of any county as a basis for ascertaining the salary of any county officer, the highesc number of votes cast at the last previous Presidential election should be multiplied by five; that Section 11016, Article 2, Chapter 100, Revised Statutes 1919, is the law that has been in force during the whole of relator's occupancy of said office; that said Act of 1921, which respondents have followed in fixing the population aforesaid, is unconstitutional; that Section 12 of Article 9 of the present Missouri Constitution provides as follows:

"The General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers and for this purpose may classify the counties by population."

It is further alleged by relator, that at the session of the Legislature of Missouri in 1921, an act was passed providing for the determination of the population of the different counties in the State for fixing the salary of prosecuting attorneys, also a similar act to determine the population under which the salary of the clerks of the circuit courts should be determined, also a similar act, in which the population for the purpose of fixing the salary of clerks of the county court should be determined, and also an act providing a manner for the determination of the population of the different counties upon which to fix the salary of county superintendents of schools; that said acts are not uniform in their operation, and are therefore contrary to said provisions of Section

12 of Article 9 of our Constitution; that said act providing for the determination of the population of the counties for fixing the salaries of clerks of the circuit court is not uniform in its operation alone, as it is based upon the vote of 1920, and there is a provision therein that the persons now holding the offices, the salaries of which are determined by this section, shall, to the end of the terms for which they are chosen, draw the same salary that was paid to the persons holding such offices at the general election of November 2, 1920, which provision would base the salaries of some of the clerks on the vote of 1916, while the act itself was based upon the vote of 1920.

The petition further alleges that the above act approved April 1, 1921, both in the caption, title and body of the act provided for the amendment of Section 10995, Article 2, Chapter 123, which said chapter contained no reference whatever to the salaries of county officers, and the chapter that did provide for and regulate the fees of county officers was Chapter 100, Revised Statutes 1919; that an act which in its title and body purported to amend Chapter 123 would not be sufficient to amend Chapter 100, and would therefore be void.

It is further averred that the County of Crawford is the real party in interest in this case; that there is a constitutional question involved, and there being more than fifty clerks of the circuit court in the State, who are not receiving the salary provided by law, is submitted as a valid reason why the Supreme Court should assume jurisdiction by mandamus and do speedy justice in the premises.

The petition concludes with a prayer, in which this court is asked to issue its writ of mandamus directed to the judges of the County Court of Crawford County, Missouri, requiring them to issue warrants on the county treasurer of said county for the sum of $700, the amount due relator for the years 1923 and 1924, and for the sum of $29.17 per month for the time he has served during

the year 1925, in settlement of the balance due him on his salary as clerk aforesaid, and for such other and further orders as may be just and proper in the premises.

The above petition was sworn to by relator.

An alternative writ was issued and served upon respondents, who made their return to the original writ in substance as follows: They admit that they are the duly elected and qualified judges of the County Court of Crawford County, Missouri; they admit, that relator George S. Summers is the duly elected, qualified and acting circuit clerk of said county; that he was elected to said office at the general election in November, 1922; that he took charge of said office on the first day of January, 1923; that said George S. Summers, as such clerk, has been paid and has received the salary as such clerk, at the rate of $1600 per annum. Respondents for further return allege that on February 1, 1923, relator herein filed with the Clerk of the County Court aforesaid his bill and demand for his monthly salary at the rate of $1600 per annum, for the month of January, 1923, for allowance by the county court aforesaid; that upon presentation of said bill it became the duty of respondents, acting as a county court, to determine and fix the salary relator should receive as clerk aforesaid, which was done by said county court, and warrants drawn accordingly.

The return further alleges that at the last Presidential election prior to the first day of January, 1923, which was the Presidential election of 1920, there were cast a total of 4,354 votes in Crawford County; that under the provisions of Section 10995, Revised Statutes 1919, as amended in 1921 (Laws 1921, p. 607), in determining the amount of salary due relator, it was the duty of said county court to multiply the total number of votes cast at the Presidential election in November, 1920, in said county, by three and one-half, for the purpose of determining the population of said county, which, when done, gives said county a population of 15,629; that

under the provisions of said Section 10995, as amended in the Act of 1921, supra, the salary of relator would be fixed at $1600 per annum, and under the provisions of said law no other amount than $1600 per annum could have been allowed as such. salary.

Respondents further allege that when relator filed his demand against Crawford County, Missouri, for his monthly salary, and such demand was allowed by the court, and a warrant issued therefor, it constituted a judgment of said court, from which an appeal could have been taken by relator, which he failed to do; that such action of the court, and a failure to appeal therefrom, is a former adjudication of the whole matter, which precluded relator from recovering the amount sued for in this action.

It is further alleged by respondents that on account of the foregoing, a full and complete settlement of the whole controversy was made, which now estops relator from maintaining this action.

It is agreed between the parties to this action that relator was elected Clerk of the Circuit Court of Crawford County, Missouri, at the November election, 1922; that he qualified as such clerk and has served since January 1, 1923, to the present time, and has paid all the fees of the office into the county treasury, and was paid a salary of $1600 per annum.

It is further agreed that Walter B. Moore was elected Clerk of the Circuit Court of Pike County, Missouri, at the November election, 1918, qualified and served as such until December, 1921, at which time he died and——was appointed in his place and served the remainder of his term.

It is agreed between the parties hereto that at the Presidential election in Crawford County, in November, 1920, there was cast in said county a total of 4,359 votes; that at the Presidential election in said county, in November, 1924, there was cast in said county a total of 4,189 votes.

State ex rel. Summers v. Hamilton.

It is further agreed that during the term of relator, as such clerk to this date, he has filed with the clerk of the county court of said county a sworn statement of the amount of fees collected by him, and that these sworn statements have been filed monthly, on the first of each month, and that on the first of each month since he was elected he has paid to the county treasurer monthly the amount of fees collected by him; that such statements and payments have been approved by the county court aforesaid; that on the first day of each month he has filed a monthly claim as salary the sum of $133.33, which said bills have been allowed by said county court in full and warrants drawn and issued accordingly; that at the time said bills were considered and allowed, no statements were, or have been, made by relator or respondents, waiving any rights that might accrue to either party.

Based on the record and agreed facts heretofore set out, relator moved for judgment, and in his motion avers that respondents' return does not set forth any legal reason for refusing to pay relator's salary as demanded in his petition; that the facts pleaded in said return do not show accord and satisfaction; that upon the facts alleged in petition, and admitted in the return, relator is entitled to recover from Crawford County, Missouri, the sum of seven hundred dollars yet due him on his salary as clerk aforesaid, during the years 1923 and 1924, being $350 for each of said years; and the further sum of $29.17 per month for each month he has served as clerk of said court during the year 1925; and it is the legal duty of said respondents to cause to be issued to him county warrants for the payment of said sums.

I. At the threshold of this case, relator challenges the constitutionality of the Act approved April 1, 1921 (Laws 1921, pages 606 and following), relied on as a defense by respondents in their return.

Act of 1921.

Section 12 of Article 9 of our present Constitution provides that: "The General Assembly shall, *by a law uniform in its operation,* provide for and regulate the fees of all county officers, and for this purpose may classify the counties by population." (Italics ours).

Under the above requirement, it was the duty of the Legislature to pass a law that would regulate the fees of all county officers, including circuit clerks, county clerks, prosecuting attorneys, etc., and which should be uniform in its operation. The above provision of the Constitution is mandatory in its terms, and no law should pass muster which does not comply with its requirements. [State ex rel. McCaffrey v. Bailey, 272 S. W. 921.]

In connection with the above provision of our organic law, it is important to know, how the General Assembly of Missouri construed said provision, in the passage of a uniform law relating to the salaries of county officers, before the year 1921.

Section 11016, Chapter 100, Revised Statutes 1919, reads as follows:

"For the purpose of determining the population of any county in this State, as a basis for ascertaining the salary of any county officer for any year, or the amount of fees he may retain, or the amount he shall be allowed to pay for deputies or assistants, the highest number of votes cast at the last previous general election, whether heretofore or hereafter held in such county, for any office, shall be multiplied by five, and the result shall be considered and held for the purpose aforesaid as the true population of such county."

Following the adoption of our present Constitution, the above section (11016) was enacted in 1887 (Laws 1887, p. 129), and remained unchanged through the revisions of 1899, 1909 and 1919. Passing, but without deciding, the question as to whether the framers of the Constitution contemplated that Section 12 of Article 9, supra, might be carried into effect by the passage of separate and distinct acts relating to each county officer

in respect to his salary, yet we have no hesitation in hold-
ing that different laws, if enacted, must be uniform in
their operation, in providing for and regulating the sal-
aries of county officers.

Respondents, in their return, contend that the Act
of 1921, Laws 1921, page 606 and following, provides,
among other things, that: ''for the purpose of this sec-
tion the population of any county shall be determined
by multiplying by three and one-half the total number of
votes cast in such county at the last Presidential election
prior to the time of such determination: Provided, that
the persons now holding the offices, the salaries of which
are determined by this section, shall to the end of the
terms for which they are chosen, draw the same salary
that was paid to the persons holding such offices at the
time of the general election of November 2, 1920.''

The constitutionality of the above law is challenged
by relator, upon several grounds which we will now pro-
ceed to consider.

The title to above act is couched in the following lan-
guage: ''An Act to amend Section 10995, *Article 2,
Chapter 123,* Revised Statutes of Missouri, 1919, by strik-
ing out certain words and inserting other words in lieu
thereof, making a new rule for determining the salary of
clerks of the circuit court and fixing the salary of cir-
cuit clerks in office at the time this act goes into effect,
with an emergency clause.'' (Italics ours.)

Section 1 of above Act provides: ''That Section
10995, *Article 2, Chapter 123,* Revised Statutes of Mis-
souri, 1919, be and the same is hereby amended by strik-
ing out the word 'five' in line twenty-eight thereof and
inserting the words 'three and one-half' in lieu thereof,''
etc. (Italics ours.)

Turning to Article 2 of Chapter 123, Revised Stat-
utes 1919, called for in both the title and body of above
act, we find, that it relates solely to ''Depositories of
State Moneys'' and does not directly or indirectly refer
to circuit clerks or the salaries thereof. We are of the

opinion that said act is void for uncertainty, and that nothing can be supplied by way of judicial construction to make it effective. [Dworkin v. Ins. Co., 285 Mo. l. c. 363, 226 S. W. 851; State v. Railroad, 253 Mo. l. c. 655; State v. Light Co., 212 Mo. l. c. 109-10.]

With the foregoing Act of 1921 eliminated from our consideration, it leaves the salary of the circuit clerk to be determined from the law as it stood prior to 1921.

Section 10995 of Article 2 of Chapter 100, Revised Statutes 1919, provides that: ''The clerks of the circuit courts of this State shall receive for their services, annually, the following sums: . . . in counties having a population of 20,000 persons and less than 25,000 persons, the sum of nineteen hundred and fifty dollars . . . for the purpose of this section the population of any county shall be determined by multiplying by five the total number of votes cast in such county at the last Presidential election prior to the time of such determination.''

Turning to Section 11016 of Article 2 of Chapter 100, Revised Statutes 1919, heretofore quoted, we find that it is consistent with Section 10995, Revised Statutes 1919, supra.

Reverting to the agreed statement of facts, we find that at the November, 1920, Presidential election in Crawford County, there were cast 4,359 votes, which, multiplied by five, gave the population of said county as 21,795. It is further agreed, that at the November, 1924, Presidential election in said county, there were cast 4,189 votes, which, multiplied by five, gave the population of said county as 20,945. Section 10995, Revised Statutes 1919, fixed the salaries of circuit clerks in counties having a population of 20,000 persons, and less than 25,000 persons, at $1950 per annum, as claimed by relator in this action. Unless, therefore, the defense of accord and satisfaction, or estoppel, set up by respondents in their return, precludes a recovery, the relator would be entitled to maintain this action. We will determine the

soundness of this contention, after considering the constitutionality of the Act of 1921 (Laws 1921, pp. 606 and following) from an additional viewpoint.

II.    The same Legislature in 1921 (Laws 1921, p. 574 and following) passed an act in relation to the compensation of the prosecuting attorneys in which it is provided that: "the number of inhabitants of any county shall, for the purpose of this section, be ascertained by multiplying the highest number of votes cast in said county for any one office at the last preceding Presidential election by *three*."   (Italics ours).

**Prosecuting Attorney Act.**

This act relating to prosecuting attorneys has been held unconstitutional and void, in a well-considered opinion by RAGLAND, J., entitled State ex rel. McCaffrey v. Bailey, 308 Mo. 444, 272 S. W. 920, in which all the members of Division Number One concurred.   In concluding the opinion, Judge RAGLAND disposed of the Prosecuting Attorney Act, supra, as follows: "The statute therefore fails to meet the constitutional requirements that it be 'uniform in its operation,' and is void.   [Sec. 12, Art. 9, Const.]"

The above law, in regard to salaries of prosecuting attorneys having been declared void, it becomes necessary, in ascertaining said salaries, to fall back upon Section 734, Revised Statutes 1919, or the general section, Section 11016, Revised Statutes 1919, heretofore mentioned.   Both sections provide, in legal effect, that the salaries of prosecuting attorneys shall be determined by multiplying the whole number of votes cast at the last preceding Presidential election by five.   The act under consideration relating to circuit clerks attempts to fix their salaries by multiplying the whole number of votes cast at the last preceding Presidential election by three and a half.   As the prosecuting attorney and circuit clerk are both county offices, there is lack of uniformity in fixing their salaries, as required by Section 12

of Article 9 of the Constitution, which provides that: "The General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose may classify the counties by population."

There is also lack of uniformity as required by the provisions of Section 11016, Revised Statutes 1919, heretofore set out, which stands unrepealed.

Other plausible reasons are presented in relator's brief, as to why the Act of 1921, relating to the salaries of circuit clerks, should be declared unconstitutional and void, but we do not deem it necessary to consider same in view of what has already been said on the subject. We will now recur, in the succeeding paragraph, to a consideration of the defense of accord and satisfaction or estoppel relied on by respondents.

III.    Having reached the conclusion that relator was entitled under our Constitution and Statutes to **Estoppel.** $1950 per annum as his salary, what has transpired to cut off his right to recover the difference between the above amount and the salary of $1600 paid by respondents?

The County Court of Crawford County was not vested by law with the power to compromise relator's rights and compel him to accept as his salary less than the law allowed him. The county court was simply required, in the performance of a purely ministerial act, to issue warrants to relator for his monthly salary, based on the population of said county, as determined under the foregoing law. In so doing, it was not acting judicially. [Marion County v. Phillips, 45 Mo. 75; State to use Carroll Co. v. Roberts, 60 Mo. 402, 62 Mo. 388; Cole County v. Dallmeyer, 101 Mo. 57; Sears v. Stone County, 105 Mo. 236; State ex rel. Christian County v. Gideon, 158 Mo. l. c. 338; State ex rel. v. Diemer, 255 Mo. 336; State ex rel. Moss v. Hamilton, 260 S. W. 466.]

We are of the opinion that, on the undisputed facts, the doctrine of estoppel has no place in the case. The

conclusion reached by Court in Banc, speaking through GRAVES, J., in State ex rel. Moss v. Hamilton, 303 Mo. 302, 260 S. W. l. c. 471, is applicable to the facts in this case, and we hereby adopt the same, as follows:

"If there was the legal obligation upon Crawford County to pay relator at the rate of $1950 per year, as we have ruled, then there is nothing in the conduct and acts of relator which occasioned  said county through respondents to act to their detriment, or to change its position to its detriment. At most the county only partially discharged a legal obligation. The partial payment of a legal obligation is not payment in full, and does not discharge the debt. [Zinke v. Maccabees, 275 Mo. l. c. 666, 205 S. W. 1.]

"Upon the facts no act of relator caused Crawford County, or respondents, its agents, to do anything to the detriment of the county or to themselves, as its agents. There was simply a part payment of a debt which the county owed under the law.

"Our alternative writ should be made absolute, and it is so ordered."

The alternative writ of mandamus heretofore issued is accordingly made absolute. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. *Walker, P. J.,* and *White, J.,* concur; *Blair, J.,* concurs in paragraphs one and three, and in the result.