THE STATE EX REL. BRIDGIE O'CONNOR, Adminstrator of Estate of Lewis O'Connor, v. HENRY J. RIEDEL ET AL., Judges of County Court of Marion County.—46 S. W. (2d) 131.

Court en Banc, February 6, 1932.

618

*Hostetter & Haley* and *Hulse & Hulse* for relator.

*J. W. Hays* for respondents.

*Ruby M. Hulen* and *Franklin E. Reagan, Amici Curiae.*

RAGLAND, J.—Mandamus. This proceeding was originally brought at the relation of Lewis O'Connor, the Prosecuting Attorney of Marion County, to compel the county court of that county to pay him the balance of the salary which he contended was due him as prosecuting attorney for the months of January and February, 1931. Before final submission Mr. O'Connor died and the cause was revived in the name of the administratrix of his estate.

The county court had paid relatrix's intestate for the months of January and February on the basis of an annual salary of $2,500. He then insisted, as does relatrix now, that his salary as prosecuting attorney as fixed by law was $5,000 per year. The governing statute, Section 11314, Revised Statutes 1929, provides:

"On and after the first day of January, 1921, the prosecuting attorney shall receive for his services per annum, to be paid out of the county treasury . . . in all counties having a population of thirty thousand and less than fifty thousand inhabitants, the sum of twenty-five hundred dollars ($2,500); in all counties having a population of fifty thousand and less than seventy thousand inhabitants, the sum of five thousand dollars ($5,000); . . . The number of inhabitants of any county shall, for the purpose of this section be ascertained by multiplying the whole number of votes cast at the last preceding presidential election by five, *until after the population of such county shall have been ascertained by the next decennial census of the United States.*"

If the number of inhabitants of Marion County was to be determined by multiplying the whole number of votes cast at the last preceding presidential election by five, the county had "a population of 50,000 and less than 70,000 inhabitants," and the prosecuting attorney's salary was $5,000 a year. On the other hand, if the number of inhabitants was to be ascertained from the 1930 decennial census of the United States, the population fell within the brackets of 30,000 to 50,000, and the salary was $2,500 per annum.

It is the relatrix's contention that the last clause of Section 11314, which we have italicized, should be disregarded. The grounds on which she bases the contention are these: the clause prevents said section from being uniform in operation with certain other statutes,

providing for and regulating the salaries of other county officers, which contain no similar clause or provision; that the lack of uniformity so introduced is in contravention of Section 12, Article IX, of the Constitution; and that the clause can be eliminated without affecting the validity of the remainder of the statute.

This case has been twice argued at the bar of this court and numerous briefs have been filed by *amici curiae*. Many different views are pressed touching the proper construction or interpretation of both the constitutional provision and the statute just referred to. These will all be considered, in so far as they have any pertinency, in what is to follow.

I. Section 12, Article IX, of the Constitution, made its first appearance as part of our organic law in 1875. It provides:

"The General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose may classify the counties by population."

The subject of the provision is *fees* of county officers. They now generally receive, and for many years have received, compensation in the form of *salaries*. The question is, does the provision just quoted include salaries.

The word "fees," if used in its narrow, distinctive sense, signifies the compensation for particular acts or services rendered by county officers in the line of their duties, to be paid by the individuals obtaining the benefit of the acts, or receiving the services, or at whose instance they were performed. But a glance at the statutes in force at the time (Wagner's Statutes 1872), will show that in the main only state officers then received salaries within the strict meaning of that term. Practically all county officers (with whom, alone, the constitutional provision was dealing) were compensated by fees, but when a limit was placed on the amount of fees an officer might retain, that maximum was regarded as his salary, and therefore, in a generic sense, the word "fees" implied compensation or salary, since it was the source of these. In a case involving questions of this nature decided in 1893, it was held the word "fees" in its more comprehensive signification meant compensation. Callaway County v. Henderson, 119 Mo. 32, 39, 24 S. W. 437, 439; and there is authority for that view from other jurisdictions. [3 Words & Phrases, p. 2713; 2 Id. (2d Ser.), p. 478.] In a number of cases in recent years this court has assumed, and therefore by implication held, that the constitutional provision comprehends the salaries of county officers; State ex rel. Summers v. Hamilton, 312 Mo. 157, 260 S. W. 466; State ex rel. McCaffrey v. Bailey, 308 Mo. 444, 272 S. W. 921; State ex rel. O'Bryan v. Randolph County, 274 S. W. 356; State ex rel.

Chaney v. Grinstead, 314 Mo. 55, 282 S. W. 705; State ex rel. Lamm v. McCurdy, 282 S. W. 722; State ex rel. James v. McCurdy, 282 S. W. 724; State ex rel. Rucker v. McCurdy, 282 S. W. 724; State ex rel. Hulen v. Johnson, 282 S. W. 724; State ex rel. Sperry v. Beaty, 282 S. W. 725; State ex rel. Hart v. Ludden, 285 S. W. 421. After mature consideration we still adhere to that construction.

II. The next feature of said Section 12 calling for interpretation is the word "all" in the phrase "all county officers." Is it used in the sense of each and every one? or does it signify totality? Is the requirement of the section met, if as to each and every county officer a law is passed providing for and regulating his fees, which, without regard to laws providing for and regulating the fees of the others, operates uniformly throughout the State? or must all such laws operate uniformly with respect to each other? Related to these questions and having a possible bearing on their solution is the further question: Is the last clause of the section, with respect to the authority given to classify counties by population, merely permissive? Or is it mandatory? This last will be disposed of first.

1. The primary purpose of the section undoubtedly is to secure uniformity in the operation of laws fixing the compensation of county officers: the classifying of the counties by population is incidental— collateral. It is merely a method by which the required uniformity may be realized. If some other method (of classification or otherwise) will produce that result, the essential objective of the section will be just as surely attained. The form of the language employed clearly indicates that the classifying of counties by population was intended as a permissible but not as an exclusive method of securing the prescribed uniformity: "and for this purpose may (not shall) classify the counties by population." But it is argued that, if the clause does nothing more than confer the power to classify the counties by population, it serves no purpose whatever, because the Legislature has always possessed, and now possesses, that power independently of the purported grant. It should be considered, however, that there has been in some of its aspects a very great development of constitutional law since the adoption of our present Constitution in 1875. Since that time tomes have been written on the subject of classification of persons and things for the purpose of legislation, in determining whether innumerable statutes and ordinances fell within the condemnation of the 14th Amendment of the Constitution of the United States or the due-process clauses and the provisions relating to the enactment of local or special laws of our own and other state constitutions. While there

have been classifications for legislative purposes since the earliest times, the principles determining their validity under American constitutions are of comparatively recent development. Had they been as familiar in 1875 as they now are, it is probable that the last clause of said Section 12 would have been omitted. But be that as it may, if the words used be given their usual and ordinary meaning, the clause permits, but does not command, the classification of counties by population for the purpose of bringing about uniformity of operation. That was the construction put upon it by this Court en Banc in Greene County v. Lydy, 263 Mo. 77, 172 S. W. 376, and in State ex rel. v. Grinstead, 314 Mo. 55, 282 S. W. 705. We still think that construction sound.

2. "In placing a construction on a Constitution, or any clause or part thereof, a court should look to the history of the times and examine the state of things existing when the Constitution was framed and adopted, in order to ascertain the old law, the mischief and the remedy." [6 R. C. L. 51, sec. 46.] A very cursory examination of the history of legislation in this State prior to 1875 discloses that special interests and particular individuals and localities from time to time secured by means of local or special enactments, rights, privileges and immunities not shared by the public at large, and often inimical to the public interest. As a result the statutes, as a whole, at the time of the adoption of the present Constitution, did not operate uniformly throughout the State; they were a hodge-podge of local and special laws. That it was the purpose of the authors of the Constitution to purge the statute laws of the State of the vice of special legislation is written large in that document. Section 53, Article IV, after expressly prohibiting the General Assembly from passing any local or special laws for designated purposes, enumerated in thirty-two separate paragraphs, provides that no local or special law shall be enacted where a general law can be made applicable, and whether a general law in any case can be made applicable shall be a judicial question. One of the express prohibitions is that the Legislature shall not pass any local or special laws "regulating the affairs of counties, cities, townships, wards or school districts" (Paragraph 2).

One species of special legislation which confronted the framers of the Constitution consisted of innumerable local acts fixing the salaries of individual county officers here and there throughout the State. The following will illustrate:

An act providing that in Shelby County the probate judge shall receive the same fees allowed county clerks. [Laws 1873, p. 191.]

An act providing that in Pulaski County the probate judge shall receive a salary of $240 per year. [Laws 1875, p. 396.]

An act providing that in Buchanan County the county judge shall receive $300 per year. [Laws 1875, p. 360.]

An act providing that in Shannon County the county judge shall receive $5 per diem. [Laws 1875, p. 424.]

An act providing that in Knox County the treasurer and ex-officio collector shall receive two per cent of taxes collected. [Laws 1875, p. 383.]

· An act providing that in Chariton County the recorder shall receive additional ten cents per instrument and other fees. [Laws 1872, p. 243.]

An act providing that in Carroll, Howard and Ray Counties the circuit clerk shall receive designated fees for recording certain instruments. [Laws 1870, p. 192.]

An act providing that in Chariton County circuit clerk and county clerk shall receive a salary of $1,500 per year. [Laws 1875, p. 369.]

An act providing that in Chariton County the sheriff shall receive a salary of $1,500 per year. [Laws 1874, p. 211.]

It is common knowledge that where a bill is introduced in a legislative body which after it becomes a law will affect only one county or district, such bill will not be subjected to the critical judgment of the body as a whole: if the member from the county or district to be affected desires it passed, it will be. The potential evils of that method of legislating are illimitable. As regards the passage of laws fixing the compensation of county officers, those evils are fully obviated by the enactment of a separate statute for each of the county officers, which, without reference to the others, operates uniformly in all the counties of the State. Such enactments, therefore, fully satisfy the constitutional requirement. This view accords with the construction of said Section 12 necessarily implied in Henderson v. Koenig, 168 Mo. 356, 68 S. W. 72, overruled as to another point, and in State ex rel. v. Bailey, 308 Mo. 444.

3. In determining the constitutionality of statutes great weight has always been given to the contemporaneous construction placed upon the several provisions of the fundamental law. This is particularly true with regard to the construction given by the Legislature to the constitutional provisions dealing with legislative powers and procedure. Though not conclusive such interpretation is entitled to great weight and should not be departed from unless manifestly erroneous. [6 R. C. L. 6304.] Through the courtesy of the Attorney-General's office we have been furnished with a complete abstract of all laws passed by the Legislature from 1875 down to the present date, having to do with the fees or salaries of county officers. Even a casual examination of this abstract makes it apparent that from the beginning the Legislature has consistently construed said Section 12 as requiring *only* that every statute passed for the purpose of providing for and regulating the salary or fees of a county officer shall,

without regard to other such statutes, operate uniformly in all of the counties: it has in no instance attempted to pass compensation acts which *with respect to each other* would operate uniformly. While the fees and salary statutes now in force employ a classification of counties based mainly on population, the units or brackets of population used to graduate the compensation are not the same in any two relating to different officers. The statutes further differ in the classifications employed as the bases for fixing the salaries of the different officers. The holding of circuit court in two or more places in a county, or the existence in a county of a city of the first or second class or of a given population, or the immediate proximity of a city of designated population, are some of the varying elements which, in addition to population, enter into the classifications of the different statutes and which render no two of them uniform in operation. In some of the statutes the taxable wealth of the county is made an element of classification: in others the population is wholly ignored and the amount of taxes levied, including licenses, is made the sole basis of classification. While there are other differences, those pointed out are sufficient to show that the adoption of the construction of said Section 12 now urged upon the court will render all the statutes providing for and regulating the fees and salaries of county officers unconstitutional and void. The legislative construction should therefore be retained unless it is palpably erroneous, and that cannot be said. Otherwise, the functions of county governments will be completely disorganized, if not destroyed.

Our conclusion is that said Section 12 was intended as specific application of the general prohibition of Section 53, Par. 2, Article IV, prohibiting the General Assembly from passing any local or special law "regulating the affairs of counties, etc.," and that a statute which, singly or in conjunction with supplementing statutes, provides for and regulates the fees or salary of a single county officer and which, without reference to other similar statutes, operates uniformly throughout the State is not a local or special law. The prosecuting attorneys' statute involved, Section 11314, Revised Statutes 1929, comes within that description and hence is not a local or special law, unless for the reasons advanced in support of the contention next to be considered.

III. In briefs filed by *amici curiae* it is contended, on a further ground, that the last clause of said Section 11314 introduces into the statute unconstitutionality, and should therefore be expunged. As they construe the language it carries the implication that after the populations of the several counties shall have been ascertained by the 1930 census such populations shall constitute forever the basis of classification of counties

for salary purposes, regardless of the changes in population which take place in due course of time. This they say makes the statute local or special in its operation within the purview of the holding in State ex rel. v. Williams, 232 Mo. 56. That the statute has left something to implication or inference is unquestionably true. Whether our friends have drawn the proper inference should be considered.

The closing sentence of the section provides for but two things in express terms: the multiplying of the whole number of votes cast at the last preceding presidential election by five as a method of ascertaining population, and the termination of the use of that method upon the occurrence of a designated event. The event has occurred, the method just mentioned can no longer be employed. How are the populations of the counties to be now ascertained? There is no express language requiring a resort to the "next" or any other decennial census of the United States. But the implication is clear that after the occurrence of the event which puts an end to the further use of the presidential-vote method the populations shall be ascertained from the official census of the United States. But which census? One which is obsolete for all except historical or statistical purposes? Manifestly the one at the time in current use for every other practical purpose—the last one. That which is implied in a statute is as much a part of it as what is expressed. [2 Sutherland on Stat. Const. (2 Ed.) sec. 500, and cases cited.] The contention of the *amici curiae* cannot be sustained.

In accordance with the foregoing we hold that said Section 11314, in its entirety, is valid in all the respects as to which its constitutionality is challenged. Under its plain terms the prosecuting attorney of Marion County is entitled to a salary of $2,500 and no more.

Our alternative writ is therefore quashed. All concur, *White, J.,* in the result only.