HERBERT PERKINS v. CHARLES R. BURKS, RICHARD ROPER and W. S. BROCK, Appellants.—78 S. W. (2d) 845.

Division One, December 21, 1934.

*J. M. Tatum* and *J. T. Pinnell* for appellants.

250

*Lon Kelley* for respondent.

HYDE, C.—This is a proceeding in mandamus in the Circuit Court of McDonald County by Herbert Perkins, as petitioner and relator, against the judges of the county court of McDonald County, seeking to compel them to issue warrants for $437.43, for the balance of the salary claimed to be due him from January to December, 1931. On behalf of the county judges, a motion was filed to quash the alternative writ on the ground, among others, that Perkins had a full and adequate remedy at law. The same proposition was again raised by their return to the writ. Upon a hearing the writ was made absolute and appeal was taken by the county judges (hereinafter referred to as appellants), to this court. This court held it was without jurisdiction and transferred the case to the Springfield Court of Appeals. [Perkins v. Burks, 61 S. W. (2d) 756.] The Springfield Court of Appeals held that Perkins had adequate legal remedies and reversed the judgment without prejudice to plaintiff to pursue his remedy at law. [Perkins v. Burks, 64 S. W. (2d) 712.] The Springfield Court of Appeals, however, deemed its decision in conflict with the decision of the Kansas City Court of Appeals in State ex rel. Sunderwirth v. Harper, 225 Mo. App. 254, 30 S. W. (2d) 1039, and certified the case to this court under the provisions of Section 6, Constitutional Amendment of 1884.

The case was tried in the circuit court upon an agreed statement of facts which is set forth in full in the opinion of the Springfield Court of Appeals. The facts from which the controversy over Perkins' salary arises, which are conceded by the pleadings, are that Perkins was elected circuit clerk of McDonald County at the election of November 4, 1930; that he qualified and had continued in this office from January 1, 1931, up to the filing of his petition for mandamus in January, 1932; that the United States census of 1930 showed the population of McDonald County to be less than 15,000 (13,936); that the total number of votes cast in said county at the presidential election of 1928 was 5,776; that Perkins was paid salary at the rate of $2,000 annually until June 1, 1931; that the court then made an order of record fixing the amount, which it found to be due Perkins for salary thereafter, at $1,250 annually; that on the first of each month thereafter Perkins presented a statement of the amount, claimed to be due him, for his salary, in the sum of $166.66; that

the county court refused to pay the full amount of these statements which aggregated for the seven months $1,166.62; that the county court did pay to Perkins the total sum for these seven months of $720.19; and that the difference between these amounts, which Perkins now claims to be due him for the balance of his salary for these seven months is $437.43.

Perkins claims this amount under Section 11786, Revised Statutes 1929, by which salaries of circuit clerks are fixed upon a scale purporting to be based upon the population of the counties in which they serve, but which provides that: "For the purpose of this section the population of any county shall be determined by multiplying by five the total number of votes cast in such county at the last presidential election prior to the time of such determination." The population of McDonald County calculated by this method would be 28,880. This section provides that circuit clerks "shall receive for their services annually . . . in counties having a population of 25,000 persons and less than 30,000 persons, the sum of $2,000." It is pointed out by appellants that there is another section (11811, R. S. 1929) which provides for the salaries of both circuit clerks and county clerks, likewise purporting to fix salaries upon the basis of population, which states that: "For the purpose of Articles 2 and 3 of this chapter, the population of any county shall be determined by multiplying by three and one-half the total number of votes cast in such county at the last presidential election prior to the time of such determination." This section originally provided for determining the population by multiplying the presidential vote by five (Sec. 11019, R. S. 1919), but was amended in 1921 to provide for multiplying the presidential vote by three and one-half instead of five. [Laws 1921, p. 608.] Both Sections 11786 and 11811 are part of Article 2 of Chapter 84, Revised Statutes 1929, and were part of Article 2 of Chapter 100 of Revised Statutes 1919. A similar amendment was made in 1921, of what it is now Section 11786, Revised Statutes 1929, then Section 10995, so that it would also provide for determining the population by presidential vote by three and one-half. [Laws 1921, 606.] This amendment was held void for uncertainty because it referred to this section as being a part of Chapter 123, Revised Statutes 1919, referring to state depositories, instead of Chapter 100, covering salaries and fees. [State ex rel. Summers v. Hamilton, 312 Mo. 157, 279 S. W. 33.] However, if the population of McDonald County is determined by the method prescribed by Section 11811, Revised Statutes 1929 (three and one-half times the vote) it would be 20,216; and under both 11811 and 11786 clerks are allowed $1,950, in all counties having a population of 20,000 and less than 25,000 persons. Therefore, the difference in the method of computation under these

methods could only make a difference of fifty dollars in Perkins' annual salary.

Appellants contend that the population cannot now be determined by either statutory method, but that the only basis for fixing Perkins' salary is the population shown by the 1930 census. Both Sections 11786 and 11814, Revised Statutes 1929, make the compensation of circuit clerks in counties of the 10,000 to 15,000 population class, $1,250. There is still another section, 11808, Revised Statutes 1929, which provides: "For the purpose of determining the population of any county in this State, as a basis for ascertaining the salary of any county officer for any year, or the amount of fees he may retain, or the amount he shall be allowed to pay for deputies or assistants, the highest number of votes cast at the *last previous general election*, whether heretofore or hereafter held in such county, for any office, shall be multiplied by five, and the result shall be considered and held for the purpose aforesaid as the true population of such county." This section, which was 11016, Revised Statutes 1919, was enacted in 1887 (Laws 1887, p. 129), and has remained unchanged ever since, apparently being overlooked in 1921 when the other sections were amended. Appellants point out also statutes fixing other county officers' salaries, such as superintendent of schools and prosecuting attorney. Section 9465, Revised Statutes 1929, provides for the method of ascertaining population to determine the salary of the county superintendent of schools, multiplying the presidential vote by three and one-half. This was originally 11354, Revised Statutes 1919, which provided for multiplication by five but it was also amended in 1921 to provide for multiplication by three and one-half. [Laws 1921, p. 652.] Section 11314, Revised Statutes 1929, provides for the salary of prosecuting attorneys and for ascertaining the population by multiplying the presidential vote by five "until after the population of such county shall have been ascertained by the next decennial census of the United States." This court has recently held that the purpose of this provision was to put end to the further use of the presidential vote method in fixing salaries of prosecuting attorneys after a census was taken, and that thereafter the basis was the population shown by the current census. This section had also been amended in 1921 (Laws 1921, p. 574) to provide for the multiplication of the presidential vote by three. This amendment was held unconstitutional because it did not apply to all counties. [State ex rel. McCaffrey v. Bailey, 308 Mo. 444, 272 S. W. 921.] The last Legislature has eliminated all of this conglomeration of methods by repealing all of the above-mentioned statutes and making the population shown the last previous decennial census of the United States the basis for determining the salaries of all of these county officers. [Laws 1933, pp. 178, 369, 384.]

■ The first question to be decided, here, is whether Perkins could proceed by mandamus. The Court of Appeals based its decision, that mandamus was not a proper remedy, upon its decision in State ex rel. Stipp v. Cornish, 223 Mo. App. 978, 24 S. W. (2d) 667, which held in a similar situation, that, under the decision of this court en banc in State ex rel. Mitchell v. Rose, 313 Mo. 369, 281 S. W. 396, mandamus would not lie because relator had an adequate remedy at law. In the Rose case this court said:

"Relator has an adequate remedy at law. First: After his claim for fees has been filed with the county court and in case of an adverse decision, he then can appeal to the circuit court and have a trial *de novo* as in appeals from justices of the peace. . . . Second: He can sue the county directly in the circuit court in an action at law. [Cases cited.] . . . The relator having an adequate remedy at law he has no right to proceed by mandamus."

In the Rose case, however, the question was not concerning a salary fixed in amount by law, but mandamus was there brought to compel payment of a bill of the local registrar of vital statistics of the State Board of Health whose pay was provided by statute as twenty-five cents for each birth and death certificate. This necessarily raised a fact question, namely, the actual number of births and deaths occurring and the computation of the total amount due therefor. This court held that the county court had the right and the duty to audit the claim to determine its correctness and, in case of a disagreement about it, to demand that the matter should be decided by the courts either by the suit against the county or by a continuation of the matter before it by the appeal method provided by statute. While the county court in passing upon such claims does not act in a judicial capacity, but acts merely in an administrative capacity, nevertheless, it is exercising discretion given to it, for the purpose of protecting the county from unjust or incorrect claims, which is not subject to control by mandamus. [For a discussion of the powers and duties of the county court in auditing and settling demands against the county see Jackson County v. Fayman, 329 Mo. 423, 44 S. W. (2d) 849. For other cases holding that mandamus is not a proper remedy to compel the payment of an account when there is a fact issue to be determined see Mansfield v. Fuller, 50 Mo. 338; Ward v. Cole County Court, 50 Mo. 401; State ex rel. Patterson v. Marshall, 82 Mo. 484; State ex rel. Carroll v. County Court of Cape Girardeau County, 109 Mo. 248, 19 S. W. 23; State ex rel. Langston v. Huston (Mo. App.), 41 S. W. (2d) 194; State ex rel. Brunjes v. Linville (Mo.), 8 S. W. (2d) 623.] However, here, there was no disputed fact question; both the census and the total vote at the 1928 presidential election which determined Perkins' salary under the respective contentions of the parties were facts al-

ready determined by public officers of which a court would even take judicial notice. [Cartwright v. McDonald County, 319 Mo. 848, 5 S. W. (2d) 54.]

It is one of the fundamental principles of mandamus that the right sought to be enforced by the writ must be clear. It is obvious that this cannot be true if the amount which it is sought to compel officials to pay depends upon a fact issue to be determined by them. "If, however, the amount of a salary is fixed by law, and for that reason no discretion is left as to the amount, then mandamus is an appropriate remedy, to enforce the payment of a salary to a public official against the officer or officers, whose duty it is to pay such official. In such cases the salary is a fixed amount, if it exists at all, and the sole question is the legal one as to whether or not there is a liability." [State ex rel. Koehler v. Bulger, 289 Mo. 441, 233 S. W. 486.] Of course, the legal question does not have to be so clear that there could be no dispute about it for if that were required there would be no right to proceed by mandamus at all unless relator was sure to win. Where the result was so certain as that there would usually be no need for mandamus or any other remedy. The distinction is that, when there is a controversy over compensation for services, the amount of which must be settled by determining a question of fact which might be disputed, then the act of auditing the claim and fixing the amount by the county court is a discretionary act which is not subject to be decided by mandamus; but that when the amount is fixed by law as a salary and there is no fact, which can be disputed, to be determined in order to arrive at the amount, then the act of auditing the same and drawing a warrant is merely ministerial in character, since the only question which could be raised is a legal question and not a fact question, and under the circumstances mandamus will lie to determine the question of whether there is any legal reason why the fixed amount claimed should not be paid to the claimant. It is also true that mandamus is a proper remedy to determine the purely legal question of whether a public officer is entitled to a salary, fixed as to amount by law, in spite of the fact that two other remedies, appeal to the circuit court or suit against the county, exist. Those remedies might not, under the circumstances, be full, complete and adequate. Mandamus is a short cut by which the matter can be speedily determined and it might not even be in the interest of the public for officer's salaries to be held up throughout the necessarily longer period of the ordinary course of an action at law (38 C. J. 562, sec. 32; 18 R. C. L. 132, sec. 45), since for public officers to be engaged in long drawn out litigation over their compensation, with the cities or counties they serve, would likely tend to hinder and detract from the efficiency of their services. That mandamus is a proper remedy to settle such a controversy, of a purely legal question about

the payment of salaries fixed in amount by law, is demonstrated by the great weight of authority as well as by the many cases in which this court has issued its own original writ to settle such questions. [18 R. C. L. 224, sec. 149; 38 C. J. 715-16, secs. 307-09; High on Extraordinary Remedies (3 Ed.), secs. 112-13; L. R. A. 1916B, 325, note, 1. c. 328; State ex rel. Brunjes v. Bockelman (Mo.), 240 S. W. 209; State ex rel. O'Connor v. Riedel, 329 Mo. 616, 46 S. W. (2d) 131; State ex rel. McCaffrey v. Bailey, 308 Mo. 444, 272 S. W. 921; State ex rel. Moss v. Hamilton, 303 Mo. 302, 260 S. W. 466; State ex rel. Summers v. Hamilton, 312 Mo. 157, 279 S. W. 33; State ex rel. Chaney v. Grinstead, 314 Mo. 55, 282 S. W. 715; State ex rel. Lamm v. McCurdy (Mo.), 282 S. W. 722; State ex rel. Hulen v. Johnson (Mo.), 282 S. W. 724; State ex rel. Sperry v. Beaty (Mo.), 282 S. W. 725; State ex rel. Harvey v. Linville, 318 Mo. 698, 300 S. W. 1066; State ex rel. Hart v. Ludden (Mo.), 285 S. W. 421.] Any implications to the contrary in the rather broad general statements in State ex rel. Forgrave v. Hill, 272 Mo. 206, 198 S. W. 844, are out of line with the action and statements of this court en banc in the later cases above cited.

It is, of course, also true that mandamus is a discretionary writ and not a writ of right. Its issuance by this court, in a controversy as to which fixed amount of salary applies to a certain officer, is usually put upon some such ground as stated in State ex rel. Moss v. Hamilton, supra, where it is said: "This court exercised its discretion in favor of issuing the alternative writ, because the decision of the matter was one of public importance, and because there were many other circuit clerks similarly situated." [See, also, State ex rel. Brunjes v. Bockelman, supra.] If it is proper for this court in the exercise of its discretion to proceed by mandamus to settle such an issue, the same thing is true of the circuit court. We, therefore, hold that it was within the discretion and authority of the Circuit Court of McDonald County to proceed in this case by mandamus.

Proceeding to the merits of the question, we find that in 1909 there was only one statute fixing the compensation of both circuit clerks and county clerks. It allowed both clerks to retain fees for any one year's services up to certain amounts in counties of various classifications. [Sec. 10722, R. S. 1909.] The salaries fixed by this section were increased by the Legislature in 1913. [See Laws 1913, p. 702.] In 1915 this section was repealed, insofar as it applied to circuit clerks, by an act entitled: "An act changing the method of payment of salaries of clerks of circuit courts, except in any county wherein the clerk of the circuit court is ex officio recorder of deeds." [Laws 1915, p. 378.] It would seem that this act intended to take circuit clerks entirely out of Section 10722, Revised Statutes 1909, because the repealing clause states: "The salaries provided for in

this act shall be in lieu of the aggregate amount of fees which clerks of the circuit courts are permitted to retain for their services, and for the payment of deputies, under (and) by virtue of Section 10722, of the Revised Statutes of 1909.'' In State ex rel. Moss v. Hamilton, supra, this court so construed it, saying: ''In the Act of 1915, supra, clerks of the circuit court, and their deputies, were placed upon a salary basis, rather than the old fee basis theretofore existing.'' In the next (1919) revision, however, the arrangement of sections were confusing, Section 1 of the Act of 1915 fixing circuit clerk's salaries, was placed first in the arrangement of Article 2 of Chapter 100 covering salaries and fees, as Section 10995, ahead of the former fee Section 10722, there numbered Section 11019, Revised Statutes 1919. Moreover, Section 10722, Revised Statutes 1909, was carried into this revision as Section 11019, Revised Statutes 1919, with all of its old statements applying to both circuit clerks and county clerks just as though the Act of 1915 never existed. Sections 2, 3, 4 and 5 of the Act of 1915 follow it as Sections 11020-11021-11022 and 11023, Revised Statutes 1919, instead of following Section 1 of the act (Sec. 10995, R. S. 1919), to which they apply and the original repealing clause, as Section 11023, Revised Statutes 1919, was changed to read: ''The salaries provided for in the *next four preceding sections* shall be in lieu of the aggregate amount of fees which clerks of circuit courts are permitted to retain for their services and for the payment of deputies, under and by virtue of *Section 11019, of the Revised Statutes of 1919.*'' Since Section 11019 is one of the four sections preceding 11023, this literally says that the provisions of Section 11019 are in lieu of the provisions of that section itself. To state the original meaning of the Act of 1915 it should have said, ''the provision of Section 10995 and the next three preceding sections (to 11023, namely 11020-21-22) are in lieu of the provisions of Section 11019,'' or else Section 10995 should have been placed after Section 11019 and numbered consecutively with the other sections of the Act of 1915. This same confusing arrangement and language is carried into the Revision of 1929. [Secs. 11786, 11811, 11812, 11813, 11814, 11815, R. S. 1929.]

It is only possible to clear up the meaning of these sections by going to the Laws of 1915 for the original enactment. When this is done it is clear that Section 10995, Revised Statutes 1919, now Section 11786, Revised Statutes 1929, is the only statute which provides for the compensation of circuit clerks. The Amendment of 1921 to this section, having been declared void in State ex rel. Summers v. Hamilton, supra, and no further amendment having been made prior to the Revision of 1929, in which it was carried forward just as it was in the Revised Statutes of 1919, it is effective as originally enacted. The salary of Perkins, from and after January 1,

1931, and throughout the part of that year involved in this case, must be paid by its rates.

The only grounds upon which the trial court's decision was questioned were stated in the motion for new trial as follows:

"1. The judgment in said cause is against the evidence, and against the weight of the evidence, and against the law under the evidence.

"2. The court erred in failing to sustain respondent's motion to quash the alternative writ of mandamus herein.

"3. The court erred in its declaration of law."

The contentions made in appellant's brief are that mandamus was not the proper remedy and that the population of McDonald County, as determined by the census of 1930, must be taken as the basis for computing Perkins' salary regardless of the fact that the statute prescribes another basis, the total number of votes cast in the presidential election of 1928. No declarations of law were asked or given. No question of the constitutional authority of the Legislature to adopt that basis, nor question of the constitutionality of the statute on any other ground was raised below and therefore none can be considered here. It appears, however, from some of the argument in appellant's brief they seem to contend that the Legislature has no authority to make anything the basis for fixing salaries of county officers except the population of the county as determined by the United States census. Section 12 of Article 9 of the Constitution is cited. It provides that "the General Assembly shall, by a law uniform in its operation, provide for and regulate th fees of all county officers, and for this purpose may classify the counties by population." Although the question is not raised so that it would be before us for decision, here, we deem it proper to call attention to the fact that this court has already decided against the contention that this provision requires the Legislature to make population the basis for fixing salaries of county officers. [State ex rel. O'Connor v. Riedel, supra; State ex rel. Chaney v. Grinstead, 314 Mo. 55, 282 S. W. 815; Greene County v. Lydy, 263 Mo. 77, 172 S. W. 376, Ann. Cas. 1917C, 274.]

In the Riedel case this court, en banc, said that the Legislature "has in no instance attempted to pass compensation acts which with respect to each other would operate uniformly;" that "the statutes further differ in the classifications employed as the basis for fixing the salaries of the different officers;" and "that a statute which, singly or in conjunction with supplementing statutes, provides for and regulates the fees or salary of a single county officer and which, without reference to other similar statutes, operates uniformly throughout the State, is not a local or special law."

In the Grinstead case this court, en banc, said:

"The lawmakers could take the Presidential vote as a basis of

classification, or it could take any multiple of such vote as the basis of classification, and, if this law was uniform as to the several classes no constitutional provision would be offended. . . .

"Section 12 of Article IX only requires uniformity as to the different classes made. Such uniformity as to the classes is and may be just as pronounced and apparent as it affects the several classes, if based upon a Presidential vote, or some multiple thereof, as if based upon an actual census. The classes may not cover the same counties, respectively as if actual census population were used, but there would be the same uniformity as to those counties falling into the several classes. Learned counsel overlook the fact that the lawmakers violated no constitutional provision in selecting an arbitrary method of determining population. This because actual population is not required for a valid classification."

The other arguments that appellants make are: "That the implication in all of the county officers' salary statutes is that such salaries are to be governed by the population of the counties at any given time; that until the exact population were known, an assumed population, arrived at by some possible method, should be used; that since the population is known it would be expedient and right to use the determined population as a basis to determine the salaries of all officers of a natural class as has been done in the case of prosecuting attorneys." This contention, of course, cannot be sustained since the Legislature had the authority to make the presidential election vote the basis for fixing the salary of circuit clerks and chose that as the basis rather than the census. The expediency argument was evidently made to the Fifty-seventh General Assembly, which was the proper place to make it, and that body has by its acts as above pointed out now exercised its legislative discretion in favor of appellants' contention that the population as shown by the United States census is the best basis for fixing the salaries of all county officers and has adopted that basis for the future. However, from 1887 up to 1933 it had preferred to use the election vote basis and this case must be ruled upon the law in force while Perkins was in office. This court has previously held that a circuit clerk of McDonald County who held office prior to Perkins, was entitled to be paid according to the presidential election vote method of classification. [Cartright v. McDonald County, 319 ,Mo. 848, 5 S. W. (2d) 54.]

The judgment is affirmed. *Ferguson* and *Sturgis*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.